**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|
|
**UNITED STATES OF AMERICA**         |
                                     |     **Crim. Case No.:  05-267 (RMC)**
**v.**                               |
                                     |
**FRANCISCO TORRES-GARCIA**          |
                                     |
                                     |

**DEFENDANT TORRES-GARCIA'S MOTION TO DISMISS**
**THE INDICTMENT FOR LACK OF VENUE AND**
**MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES**

**COMES NOW DEFENDANT, Francisco Torres-Garcia,** through undersigned

counsel, and respectfully submits this motion to dismiss the indictment filed against him for lack

of venue.  Mr. Torres-Garcia further asks this Court for an order directing the government of the

United States of America to immediately repatriate him to his home country, the United Mexican

States.

Defense counsel requested a hearing on this motion and the Court has set Wednesday,

January 3, 2007, at 2:00 p.m. as that hearing date.

**INTRODUCTION**

On July 21, 2005, the government filed a two-count indictment in this case charging only

Mr. Torres-Garcia with conspiracy in violation of 21 U.S.C. §§ 960 and 963 and 18 U.S.C. §2, as

well as conspiracy to commit money laundering in violation of 18 U.S.C. §§ 2 and 1956

(hereinafter referred to as the "D.C. indictment").  Thereafter, in August 2005, the government

filed a criminal complaint in the Northern District of Illinois charging Mr. Torres-Garcia and

four co-defendants with money laundering in violation of 18 U.S.C. §1956 and conspiracy in

violation of 21 U.S.C. §846 (hereinafter referred to as the "Illinois complaint").[1]  Attached to

that Illinois complaint was an affidavit detailing alleged criminal activity by Mr. Torres-Garcia

and his co-defendants (hereinafter referred to as the "Illinois affidavit" and attached hereto as

"Exhibit A").  A few weeks later, on September 6, 2005, the government filed a single count,

"bare bones" indictment in the Northern District of Illinois charging Mr. Torres-Garcia and two

of his original four co-defendants with conspiracy in violation of 21 U.S.C. §846 (hereinafter

referred to as the "Illinois indictment" and attached hereto as "Exhibit B").[2]

Mr. Torres-Garcia earnestly maintains that he is not guilty of any criminal conduct, in the

District of Columbia or elsewhere, but for the purposes of argument shall assume the facts as

alleged by the government in both this District and the Northern District of Illinois.  Mr. Torres-

Garcia submits that even assuming all facts as alleged by the government, venue to prosecute any

case against him does not properly lie in the District of Columbia, but rather that any such case

must proceed in the District(s) in which any criminal conduct allegedly took place, that is, the

Northern District of Illinois and/or the Southern District of Texas.

In its various indictments and complaint, the government never alleges that Mr. Torres-

Garcia committed any overt criminal acts within the borders of the United States, or, more

specifically, within the District of Columbia.  The government's theory of its case against Mr.

Torres-Garcia appears to be that he conspired with two individuals in Illinois and Texas to

violate 21 U.S.C. §959(a) and that he, those same two individuals and others in Panama and

Colombia conspired to launder money in violation of 18 U.S.C. §1956.  According to the

government, Mr. Torres-Garcia directed co-conspirators in Illinois and Texas to commit various

---

[1] *United States v. Javier Mendez-Garcia, et al.,* Case No. 05-cr-695.  Two of Mr. Torres-Garcia's co-defendants listed on that Complaint are allegedly located in Colombia.

[2] *United States v. Javier Mendez-Garcia, et al.,* Case No. 05-cr-695; the two Colombian defendants named on the original Complaint were not included in this Indictment.  In addition, the Illinois Indictment appears to be based upon the same set of facts as the Indictment in this case.

overt criminal acts in furtherance of the alleged conspiracy in those States, and such co-conspirators carried out those acts in Illinois and Texas at Mr. Torres-Garcia's behest.[3]

The government appears to predicate venue in the District of Columbia for the first count of the D.C. Indictment on a misguided interpretation of 21 U.S.C. §963 that would require that a conspiracy charge under §963 to violate §959 be read within the context of §959 for venue purposes.[4]  Pursuant to 21 U.S.C. §959(c), one who distributes drugs outside the United States knowing that such drugs will be eventually imported into the United States "shall be tried in the United States District Court at the point of entry where the person enters the United States, or in the United States District Court for the District of Columbia."

The government's reliance on an interdependence between §§963 and 959 is misplaced. Recently, in a case similar to the one at bar, U.S. District Judge Royce C. Lamberth stated,

> The government's position is untenable for a number of reasons. First, the government's position improperly conflates the charge of conspiracy with the underlying substantive offense.  As the indictment indicates, the defendant stands charged with the *conspiracy to violate* an extraterritorial provision, and not a violation of the extraterritorial provision itself…….
>
> Second, the government's position runs counter to the very statutory language of the provisions themselves.  Nothing in the language of §963 indicates that the two provisions must be read in conjunction with each other for venue purposes.  *See* 21 U.S.C. §963.  Rather, §963 merely states that any person who conspires to violate an underlying substantive offense such as §959 is "subject

---

[3] Upon review of the government's pleadings and discovery, Mr. Torres-Garcia submits that there doesn't appear to be any evidence that he, or one of his co-conspirators, distributed or conspired to distribute drugs outside of the United States with the knowledge that such drugs would eventually be imported into the United States.  In fact, the only evidence the government seems to provide is that Mr. Torres-Garcia and his co-conspirators were moving drugs *inside* the United States.  Given that, it is just as probable that Mr. Torres-Garcia and/or his co-conspirators were acting as brokers for suppliers and purchasers already situated in the United States.  In that event, §959 would not have been violated.  Mr. Torres-Garcia submits that the lack of evidence that §959 was, in fact, violated may be the reason he is not charged with a violation of §959 in the Indictment filed by the government in the instant case.

[4] As discussed below, the government may also be predicating venue upon 18 U.S.C. §3238 for the §963 conspiracy charge, which pertains to "offenses not committed in any district".  That argument, however, is also unpersuasive, as its allegations would only support a finding that criminal activity was, in fact, committed by Mr. Torres-Garcia in Illinois and Texas.

to *the same penalties* as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. §963.  Though the government suggests that this requires the Court to look at the venue provisions under §959(c) and apply it to the conspiracy charge, a provision establishing venue does not amount to a penalty.  Rather, it is a provision ensuring a defendant's constitutional rights under Article III of the United States Constitution.  This reasoning is bolstered by 21 U.S.C. §960(b), which details penalties for violations of provisions within the subchapter, including §959.  Accordingly, to the extent that any provision must be read together, the statutory language dictates that §963 should be read together with §960, not §959.

Finally, courts have consistently agreed that a separate venue analysis must be conducted for charges of conspiracy and the underlying substantive offense.  *United States v. Barnard*, 490 F.2d 907, 910-12 (9th Cir. 1973) (conducting a separate venue analysis for conspiracy under §963 and the underlying offense under §841); *United States v. Walden*, 464 F.2d 1015 (4th Cir. 1972); *United States v. Jordan*, 946 F. Supp. 895 (D. Nev. 1994); *United States v. LeFleur*, 669 F. Supp. 1029 (D. Nev. 1987).  This type of separate venue analysis in conspiracy cases is necessary in light of the distinct advantages afforded the government in prosecuting a defendant for conspiracy.  *Walden*, 464 F.2d at 1020 ("To add to these advantages already existing by engrafting a forum shopping option as to substantive offenses would, we think, go too far.").

*United States v. Cobar, et al.*, 2006 WL 3289267 (D.D.C. November 9, 2006) (05-451 (RCL))

(Memorandum Opinion discussing Order dismissing case for lack of venue) (footnote omitted);

(hereinafter referred to as "Judge Lamberth's Opinion" and attached hereto as "Exhibit C").

Clearly, the government cannot use the language of §959 to help it navigate the venue

pitfalls of a §963 conspiracy when the defendant has not been charged with a violation of §959.

As the government has not charged Mr. Torres-Garcia with a violation of §959, §959 must not

play any role whatsoever in a determination of where venue for the prosecution of his criminal

case properly lies.

It would appear that the only colorable argument that the government could make that

4

venue properly lies in the District of Columbia for the second count of the D.C. Indictment, a charge of conspiring to violate §1956, would be that it falls within the purview of 18 U.S.C. §3238.  Unfortunately for the government, that argument must also fail.  §3238 merely pertains to crimes committed wholly outside the geographical limits of any State.  The government's allegations, however, could only support a conclusion of extensive criminal activity within both Illinois and Texas.

Finally, should the government attempt to argue that venue is proper in the District of Columbia for both, or either, of the charges contained in the D.C. Indictment pursuant to 18 U.S.C. §3237, that argument would also fail.  §3237 governs offenses begun in one District, but completed in another.  Had the government any allegations of criminal activity by Mr. Torres-Garcia, or even one of his alleged co-conspirators, within the District of Columbia, it could use §3237 to support its contention that venue properly lies in this District because a nexus would exist between this District and the criminal activity.  Based upon its pleadings and discovery, however, the government would be unable to do so, as its allegations only support a finding of a nexus between any criminal activity and Illinois and Texas.

## STATEMENT OF PERTINENT FACTS

As stated above, and for the purposes of argument only, Mr. Torres-Garcia shall assume the allegations set forth in the various indictments and complaint previously discussed, as well as in the discovery material provided by the government.  Nothing in this motion and memorandum, any pleading filed in reply to any government response hereto, or in any oral argument before the Court related thereto should be considered as a direct or indirect admission of any of the acts ascribed to Mr. Torres-Garcia or his co-conspirators in the discovery materials or alleged in the indictments or complaint.

According to the government, Mr. Torres-Garcia conspired to conduct narcotics distribution and money laundering in the United States from Mexico with the assistance of two co-conspirators in the United States. In the Illinois affidavit, a special agent with the Drug Enforcement Agency (hereinafter referred to as the "DEA") set forth various alleged facts to support probable cause to arrest and charge Mr. Torres-Garcia and others pursuant to a criminal complaint. In that affidavit, the special agent detailed the DEA's ongoing investigation into the alleged activities of Mr. Torres-Garcia and his co-conspirators. Among other allegations, the special agent alleged the following in the Illinois affidavit:

1.      That Mr. Torres-Garcia, while in Mexico, agreed to launder money from the United States for an undercover law enforcement agent;

2.      That Mr. Torres-Garcia contacted his co-conspirator in Chicago (Javier Mendez-Garcia), directed him to meet with another undercover law enforcement agent in the Chicago area in order to discuss the logistical details of laundering the money;

3.      That on several occasions, and at Mr. Torres-Garcia's direction, his co-conspirator, Mendez-Garcia, met with an undercover law enforcement agent in the Chicago area, accepted hundreds of thousands of dollars in alleged narcotics proceeds, visited several Chicago-area currency exchange locations, and exchanged the alleged narcotics proceeds for money orders;

4.      That on at least one occasion, Mr. Torres-Garcia directed his co-conspirator, Mendez-Garcia, to "come here" (allegedly a reference to Mexico) after he had exchanged the alleged narcotics proceeds for money orders and that the co-conspirator, Mendez-Garcia, was later confirmed to have taken a flight to Mexico;

5.      That on several occasions, an undercover law enforcement agent was informed that the alleged narcotics proceeds provided to Mr. Torres-Garcia's co-conspirator, Mendez-Garcia, had been received in Colombia;

6.      That Mr. Torres-Garcia's co-conspirator in Chicago, Mendez-Garcia, discussed being able to supply an undercover law enforcement agent in the Chicago area with narcotics, that he later spoke with Mr. Torres-Garcia about supplying such narcotics and

that Mr. Torres-Garcia directed him to instruct the undercover agent to send a driver with a vehicle to Texas in order to transport methamphetamine in an operable car battery to avoid detection;

7.      That Mr. Torres-Garcia's co-conspirator in Chicago, Mendez-Garcia, detailed for the undercover law enforcement agent his source of supply's methamphetamine operation in Dallas, Texas using his car battery manufacturing business and also informed that agent that an associate of his had a shipment of cocaine going to Los Angeles that could be re-routed to Chicago for the agent;

8.      That in the presence of the undercover law enforcement agent, Mr. Torres-Garcia's co-conspirator in Chicago, Mendez-Garcia, spoke to Mr. Torres-Garcia via telephone, discussed both the methamphetamine deal in Dallas, Texas and re-routing the cocaine that was originally going to California and that Mr. Torres-Garcia made reference to previously distributing cocaine in the Chicago area;

9.      That Mr. Torres-Garcia's co-conspirator, Mendez-Garcia, made plans to travel to Texas with the undercover law enforcement agent in order to complete the methamphetamine transaction, that the co-conspirator discussed the details of such plans with Mr. Torres-Garcia, and that Mr. Torres-Garcia informed the co-conspirator that he had already discussed those plans with the Texas co-conspirator, Carlos Bucio;

10.     That Mr. Torres-Garcia's Chicago co-conspirator, Mendez-Garcia, traveled to Texas and met with the Texas co-conspirator, Bucio, that the two of them spoke to Mr. Torres-Garcia by telephone and that Mr. Torres-Garcia directed his two co-conspirators regarding completion of the methamphetamine transaction with the undercover agent;

11.     That Mr. Torres-Garcia's Chicago and Texas co-conspirators, Mendez-Garcia and Bucio, delivered to the Chicago area undercover law enforcement agent two car batteries containing methamphetamine in the parking lot of a Mobil gas station in Dallas, Texas and later telephoned Mr. Torres-Garcia to inform him that they had taken care of everything.

Although the government is proceeding as if this case alleges a typical "extraterritorial"

conspiracy in which no overt criminal acts actually occurred within the United States, which

would require a venue determination pursuant to 18 U.S.C. §3238 (or under the government's

apparent line of reasoning, §959(c)), that, in fact, is not the case.   Throughout the discovery

provided by the government, the indictments filed in two separate, federal Districts, the

complaint filed in the Northern District of Illinois and the Illinois affidavit, there are numerous

allegations of criminal activity occurring within the United States allegedly linked to Mr. Torres-

Garcia.  Chicago, Dallas and Los Angeles are discussed repeatedly as sites of criminal activity in

furtherance of the alleged conspiracy.  The government asserts that it has evidence that overt

criminal acts were allegedly committed by Mr. Torres-Garcia's alleged co-conspirators in at least

two States, Illinois and Texas.

Notably absent from all of those pleadings and discovery, however, is a single allegation

that Mr. Torres-Garcia ever conspired with anyone in the District of Columbia, that he or his

co-conspirators committed any overt acts in the District of Columbia in furtherance of an alleged

conspiracy, or that any of the acts allegedly committed by Mr. Torres-Garcia or his

co-conspirators affected the District of Columbia in any way.  There are, however, numerous

allegations that two other Districts, the Northern District of Illinois and the Southern District of

Texas, were directly involved in the activities of the alleged conspiracy.  Clearly, the government

intends to argue that Mr. Torres-Garcia and his co-conspirators committed criminal activity in

Illinois and Texas in furtherance of a conspiracy.  Given the facts as alleged by the government,

a nexus between the District of Columbia and that alleged criminal conduct does not exist.  Yet

the government appears to have gone shopping for a forum and chosen the District of Columbia

over the other, directly involved, federal Districts.

Mr. Torres-Garcia submits that assuming the government's allegations are true for the

purposes of argument, any §963 conspiracy to violate §959 would have been entered into by Mr.

Torres-Garcia while he was outside the United States, but alleged overt acts committed in

furtherance of such conspiracy occurred in the States of Illinois and Texas. It is in these two states that the alleged conspiracy was formed and where overt acts were allegedly committed. None of the drug trafficking or money laundering activities attributed to the defendants in the discovery materials and/or pleadings occurred in the District of Columbia.

**ARGUMENT**

1.     <u>The Law of Venue, Generally.</u>

Ensuring that a criminal action is initiated in the proper forum is one of the cornerstones of our system of justice. America's forefathers considered venue to be so important as to warrant a place in one of the original Articles of the United States Constitution. Specifically, Article III, §2, cl. 3 of the United States Constitution provides, in pertinent part, that a criminal trial "shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the trial shall be at such Place or Places as the Congress may by Law have directed."

Apparently desiring to ensure that a criminal defendant's right to the proper venue was protected, the authors of the Bill of Rights provided further direction in the Sixth Amendment to the United States Constitution, which provides, in pertinent part, "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and District where the crime shall have been committed…" Finally, Rule 18 of the Federal Rules of Criminal Procedure requires that a criminal prosecution must be held in the District in which the offense was committed, unless otherwise permitted by statute or those rules.[5]

At times, the complexity of federal criminal trials may cause basic, constitutional considerations such as venue to be overshadowed. Their importance, however, should not be

---

[5] The Supreme Court has held that Rule 18 echoes "the constitutional commands" of Article III and the Sixth Amendment. *United States v. Cabrales*, 524 U.S. 1, 6 (1998).

minimized, intentionally or unintentionally, as they are the bedrocks upon which our system of

justice has been built.  In fact, the Supreme Court has stated:

> Questions of venue in criminal cases…are not merely matters of
> formal legal procedure.  They raise deep issues of public policy in
> the light of which legislation must be construed.

*United States v. Johnson*, 323 U.S. 273, 276 (1944).  *See also United States v. Goldberg*, 830

F.2d 459, 465 (3rd Cir. 1987) ("The venue provisions of the Constitution are important

safeguards, protecting an accused from unfairness and hardship in defending against prosecution

by the federal government").  Venue has been considered so important in this Circuit as to

warrant reversal of a conviction upon a determination that a criminal prosecution was conducted

in an improper venue.  *See United States v. Morgan*, 393 F.3d 192, 195-196 (D.C. Cir. 2005)

(conviction for receiving stolen federal property reversed for improper venue).

It is well settled that Article III mandates that a criminal prosecution must proceed in the

State in which the crime was committed.  If the crime has been committed outside the territorial

limits of any State, it may be prosecuted in any District as directed by Congress.  Pursuant to 18

U.S.C. §3238, the statutory provision governing crimes not committed in *any* District, a criminal

prosecution for a crime not committed within the territorial limits of any District must be brought

in the District in which the offender is arrested or first brought.

It is well established that the government bears the burden of proving that venue is

proper, in light of the constitutional significance placed upon venue.  *See United States v. Lam

Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991)(" the government bears the burden of

establishing by a preponderance of the evidence that venue is proper with respect to each count

charged against the defendant").

The United States Constitution and the Federal Rules of Criminal Procedure, assure Mr.

Torres-Garcia the right to be tried in the State in which any alleged conspiracy was formed and/or in the State in which any acts in furtherance of the alleged conspiracy were committed. Although Mr. Torres-Garcia was located outside of the United States at all pertinent times herein, he allegedly formed a conspiracy with individuals located in Illinois and Texas, and overt acts in furtherance of that alleged conspiracy were committed in those States at his alleged direction.  As Mr. Torres-Garcia has not waived his right to be tried in the proper venue, he maintains that constitutional protections mandate that the prosecution of his criminal case occur in Illinois and/or Texas.

2.      The Law of Venue in Conspiracy Cases.

In order to determine the proper forum for prosecution of any case against Mr. Torres-Garcia, this Court must determine the *locus delicti* of the charged offense.  *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 280-81 (1999); *United States v. Cabrales, supra*, 6-7.  As Judge Lamberth stated in his opinion, when analyzing the *locus delicti*, a court "must determine the conduct constituting the offense, and the location where the alleged criminal conduct was completed." *United States v. Cobar, supra* (citing *Rodriguez-Moreno*, 526 U.S. at 279).  *See also, United States v. Cabrales, supra*. (The locus delicti for constitutional venue analysis must be determined from the nature of the crime alleged and the location of the act or acts constituting it.).  *Accord, United States v. Morgan*, 393 F.3d 192, 196-7 (D.C. Cir. 2005).

The issue presented in Mr. Torres-Garcia's case is whether the offenses charged in the D.C. Indictment (conspiracy to violate §959 and conspiracy to launder money in violation of §1956) were committed within a State or States or were committed outside the territorial limits of any State.  If the Court determines that the offenses were committed in a State or States, any conspiracy prosecution must occur in the State in which it was committed.  If, however, the

Court determines that it was committed "extraterritorially" (outside the geographical limits of any State), then it may be prosecuted in the District of Columbia.

According to the Supreme Court, the "essence of a conspiracy is 'an agreement to commit an unlawful act.'" *United States v. Jimenez Recio*, 537 U.S. 270, 274-5 (2003) (quoting *Iannellei v. United States*, 420 U.S. 770, 777 (1975)). Prosecution for such an agreement is not dependent upon whether or not the substantive crime ensues, as it is "a distinct evil". *Salinas v. United States*, 522 U.S. 52, 65 (1997). At common law, no overt act in furtherance of a conspiracy was required for prosecution of a conspiracy. *Hyde v. United States*, 225 U.S. 347, 359 (1911). Currently, the federal conspiracy statutes reflect the common law interpretation of conspiracy, and do not require the commission of an overt act as a required element of proof. 21 U.S.C. §§846 and 963; *See also, United States v. Yonn*, 702 F.2d 1341 (11th Cir. 1983); *United States v. Grammatikos*, 633 F.2d 1013 (2nd Cir. 1980); *United States v. Johnson*, 575 F.2d 1347 (5th Cir.), *cert. denied*, 440 U.S. 907 (1978).

Once the elements of the offense charged have been determined, the Court must ascertain where the elements occurred and where any overt acts in furtherance of the conspiracy were committed. If the criminal conspiracy is determined to be solely "extraterritorial" in nature, venue may be proper in the District of Columbia pursuant to 18 U.S.C. §3238.[6] As the very language of §3238 clearly states, however, it is only applicable in cases where criminal activity did not occur within the geographical limits of any State or District. If extensive criminal activity occurred both inside and outside the United States, §3238 is inapplicable and 18 U.S.C. §3237 may apply.

In *United States v. Gilboe*, the Second Circuit stated:

---

[6] Mr. Torres-Garcia has qualified this statement because he was first brought into the United States by DEA agents in Ft. Lauderdale, Florida, as set forth in his contemporaneously filed Motion to Dismiss the Indictment for Lack of Jurisdiction.

> But defendant relies on the wrong section; § 3238 applies only to offenses "not committed in any District," as its title indicates. But that is not the situation here. The appropriate section to apply in this case is 18 U.S.C. § 3237(a) . . . .
>
> * * * *
>
> As already indicated, there were numerous telexes and telephone calls between New York and Hong Kong and other parts of the world. Also, the proceeds of the fraud were all transferred through New York so that "such commerce" moved "from, through, or into" the Southern District of New York. Therefore, venue was proper in that District under [§ 3237(a) and not § 3238.

*United States v. Gilboe*, 684 F.2d 235, 238-239 (2nd Cir. 1982).

In the event that any alleged conspiracy is not determined to be solely "extraterritorial" in nature, venue would be proper either in the District/State in which the conspiracy was formed or in any District/State in which an overt act in furtherance of the alleged conspiracy was committed, even where an overt act is not a required element of the offense of conspiracy. *Whitfield v. United States*, 543 U.S. 209, 218 (2005).  Further, as Judge Lamberth stated in *Cobar*, "…if the indictment does not charge that the conspiracy was formed within the District where the conspiracy is being tried, that court does not have proper jurisdiction over the case unless some act creating the conspiracy – or in furtherance thereof – occurred within the District."  *Cobar, supra* (citing *United States v. Trenton Potteries Co.*, 273 U.S. 392, 402-03 (1927).  Finally, this Circuit has held that venue for a §963 conspiracy would be proper in this District as long as a *nexus* between the object of the alleged conspiracy and this District exists. *United States v. Haire*, 371 F.3d 833, 837-38 (D.C. Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005) (judgment vacated and remanded in light of *United States v. Booker*, 543 U.S. 220 (2005)).

As previously stated, Mr. Torres-Garcia submits that the government's pleadings and

discovery show, at all times pertinent herein, he never set foot in the United States.  That alone, however, is not sufficient to warrant a characterization of any alleged conspiracy in which he was involved as "extraterritorial" for the purposes of a constitutional venue analysis.

It is well settled that "[i]t is not necessary that [the defendant] himself have entered the District, as long as one of his co-conspirators did." *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994). *See also, United States v. Parrish*, 736 F.2d 152, 158 (5th Cir. 1984) (member of a conspiracy commits the offense of conspiracy in any District where the conspiracy was formed or an overt act took place, even if the individual has "never set foot" in the District).  In addition, "phone calls can constitute overt acts in furtherance of a conspiracy." *United States v. Naranjo*, 14 F.3d 145, 147 (2nd Cir. 1994).  Further, it is clear that making phone calls from one jurisdiction into another jurisdiction establishes venue in the latter jurisdiction so long as the phone calls "further the ends of the conspiracy." *Id.  Accord, United States v. Duque*, 123 Fed.Appx. 447, 449, 2005 WL 387906 (2nd Cir. 2005); *United States v. Strickland*, 493 F.2d 182, 187 (5th Cir. 1974) ("telephone calls and conversations to and from Atlanta were overt acts" and established venue in Northern District of Georgia); *United States v. Bartoli*, 192 F.2d 130, 132 (4th Cir. 1951) (phone call from Chicago, Illinois to co-conspirator in Huntington, West Virginia in furtherance of the conspiracy established venue in Southern District of West Virginia).

The Supreme Court has held that it is not necessary to be present in a jurisdiction in order to enter into or further a conspiracy.  *Burton v. United States*, 202 U.S. 344 (1906).  In *Burton*, the Court held that a defendant situated in Chicago who sent a letter to Missouri offering to perform illegal activity, and whose offer was accepted via telegram wired to him in Chicago, "completed" or "committed" the offense in Missouri for venue purposes.  "The constitutional

requirement is that the crime shall be tried in the State and District where committed, not

necessarily in the State or District where the party committing it happened to be at the time."

*Id*. at 387.  *See also United States v. Gilboe*, *supra* (under 18 U.S.C. § 3237(a), venue for wire

fraud prosecution was proper in Southern District of New York where numerous telexes and

telephone calls occurred between New York and Hong Kong, even though defendant was a

nonresident alien whose acts occurred outside the United States; 18 U.S.C. § 3238 not applicable

because section applies only to offenses "not committed in any District," as its title indicates").

*Accord, United States v. Kim*, 246 F.3d 186, 191-193 (2nd Cir. 2001) (under 18 U.S.C. 3237(a),

defendant's causing communications to be transmitted into and out of Southern District of New

York while he was overseas and approving fraudulent invoices for payment by a New York bank

established venue in Southern District conspiracy prosecution, even though defendant did not

personally send the transmissions and was not in New York when he caused the transactions to

be made).

      3.      <u>The Indictment Filed in the District of Columbia Charging Mr. Torres-Garcia
Must Be Dismissed for Lack of Venue.</u>

      The indictment filed against Mr. Torres-Garcia in this case must be dismissed because

venue in the District of Columbia cannot withstand a constitutional challenge.  The law, when

applied to the facts as alleged by the government, can only lead to one conclusion:  venue for

either of the charges levied against Mr. Torres-Garcia's is not proper in the District of Columbia.

As a result, the government is incapable of meeting its burden to establish that venue is proper by

a preponderance of the evidence.

      A.   Count One.

      It would appear that the government is attempting to establish venue in the District of

Columbia for the first count of the D.C. Indictment upon an interpretation of §963 that would

require that it be read within the context of §959 for venue purposes. As Judge Lamberth made

clear in his recent opinion, such an interpretation is without merit. There is nothing in the

language of §963 that requires that it be read in that manner. In fact, as the case law establishes,

for the purposes of venue, courts are charged with conducting a separate venue analysis for a

conspiracy charge and the underlying substantive offense.

Mr. Torres-Garcia has not been charged with a count of violating §959. Had he been, a

colorable argument that venue was proper in the District of Columbia could be made. He has,

instead, been charged with conspiracy to commit a violation of §959 under §963. As a result,

this Court must determine the *locus delicti* of the alleged conspiracy with which he is charged.

Should the alleged conspiracy be "extraterritorial", §3238 would apply and venue would be

proper in the District of Columbia. Should the alleged conspiracy not be "extraterritorial",

§3238 would not apply and, as no nexus exists between the District of Columbia and the alleged

criminal conduct, venue would not be proper in the District of Columbia.

Mr. Torres-Garcia acknowledges that the government's pleadings and discovery indicate

that he never set foot in the United States during the alleged conspiracy. That alone, however, is

not sufficient to establish that the conspiracy was located outside the geographical limits of a

State, so as to render venue proper in the District of Columbia. It has been consistently held that

for the purposes of venue, it is not necessary that a defendant himself set foot in a District, so

long as one of his co-conspirators did. *United States v. Corona*, *supra*; *United States v. Parrish*,

*supra*. Assuming the government's allegations to be true for the sake of argument, Mr. Torres-

Garcia allegedly conducted extensive criminal activity in furtherance of the alleged conspiracy,

through his alleged co-conspirators, in Illinois and Texas. As a result, he was present in those

States for the purposes of a venue consideration. Therefore, §3238 is not applicable and

16

pursuant to the authority of *United States v. Haire, supra*, venue does not properly lie in the District of Columbia because there is no link between this District and the alleged criminal conduct.

Mr. Torres-Garcia maintains that, assuming the government's allegations to be true for the purposes of argument, venue for Count One of the D.C. Indictment may properly lie in either the Northern District of Illinois or the Southern District of Texas.  Where venue is appropriate in two or more Districts, many courts apply the "substantial contacts" test to determine venue. That test "takes into account a number of factors -- the site of the defendant's act, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each District for accurate fact finding. . . ." *United States v. Brika*, 416 F.3d 514, 527 (6th Cir. 2005), quoting *United States v. Reed*, 773 F.2d 477, 481 (2nd Cir.1985). Under this line of authority, Mr. Torres-Garcia maintains that the government's allegations would indicate that the Southern District of Texas would be a more appropriate venue for Count One than the Northern District of Illinois.  The District of Columbia, however, is absolutely an improper venue for that count, and it must be dismissed.

        B. Count Two.

It would appear that the government could only be basing venue in the District of Columbia for Count Two of the D.C. Indictment on either §3238 or §3237.  Given the government's allegations, however, venue in the District of Columbia based upon either of those provisions does not survive a challenge.

As discussed above, §3238 merely pertains to crimes committed wholly outside the geographical limits of any State.  Assuming the government's allegations to be true for the purposes of argument, it would appear that the crime of conspiracy to commit money laundering

in violation of §1956 occurred both inside and outside the United States.  According to the government, Mr. Torres-Garcia allegedly met with an individual outside the United States and agreed to launder money for that individual.  Thereafter, he contacted his alleged co-conspirator in Illinois, informed him of the agreement, directed him to meet with another individual in Illinois and, apparently, instructed him to exchange purported narcotics proceeds for money orders (also in Illinois) and, on at least one occasion, fly to Mexico to deliver them to him.  That particular set of facts can only lead to one conclusion:  the *locus delicti* of any conspiracy to launder money was both inside and outside the United States.  As a result, §3238 does not apply and venue is not proper in the District of Columbia.

As §3238 does not apply, it is necessary to again examine whether a nexus exists between the District of Columbia and the alleged criminal conduct.  Once again, one does not exist.  There is not a single allegation that either Mr. Torres-Garcia or his alleged co-conspirator met with anyone in the District of Columbia, accepted narcotics proceeds in the District of Columbia, exchanged those proceeds in the District of Columbia or traveled to the District of Columbia.  Accordingly, pursuant to the authority of *United States v. Haire, supra* and the language of §3237, venue does not properly lie in the District of Columbia because there is no link between this District and the alleged criminal conduct.

Mr. Torres-Garcia maintains that, assuming the government's allegations to be true for the purposes of argument, venue for Count Two of the D.C. Indictment may properly lie in the Northern District of Illinois.  The District of Columbia, however, is absolutely an improper venue for that count, and, therefore, it must be dismissed.

**WHEREFORE,** Mr. Torres-Garcia asks this Court to dismiss the indictment against him and order his immediate repatriation to Mexico.

Respectfully submitted,

**RETURETA & WASSEM, P.L.L.C.**

By: _____/s/_____

Manuel J. Retureta, Esq.
District of Columbia Bar #430006
601 Pennsylvania Avenue, NW
South Building – Suite 900
Washington, D.C.  20004
(202) 220-3073
(202) 220-3130 Fax

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing pleading was served on all parties via ECF on this 17th day of November 2006.

_____/s/_____

Manuel J. Retureta, Esq.