UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.                                                  : | Criminal No.: 05-267 (RMC) |
| : | |
| FRANCISCO TORRES-GARCIA : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT FOR LACK
OF JURISDICTION**

The United States of America, by and through Matthew Stiglitz, Trial Attorney, U.S. Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, hereby opposes the defendant's Motion to Dismiss the Indictment for Lack of Jurisdiction. The government relies upon the points and authorities set out in this memorandum and at any hearing on the matter.

**Factual Background**

On July 21, 2005, the Grand Jury sitting in the District of Columbia returned the indictment in the above-captioned case. That same day, United States Magistrate Judge Deborah Robinson issued an arrest warrant for the defendant, who is a Mexican national.

On August 3, 2005, this arrest warrant was entered into INTERPOL's international database, alerting police agencies world-wide that the defendant was wanted in the United States. Panama is a member country of INTERPOL and it's police authorities have access to this database.

Subsequent to the issuance of the arrest warrant, an undercover agent with the Drug Enforcement Administration (DEA), who had previously been in contact with the defendant and had met him twice in Panama, arranged to meet him there for a third time on August 8, 2005. The DEA alerted the Panamanian authorities to the INTERPOL notice concerning the defendant's status as a

fugitive, and that he was expected to arrive in Panama. The DEA forwarded to the Panamanians copies of the arrest warrant, indictment, photograph and other biographical information.

On August 7, 2005, the defendant flew to Panama to meet with the undercover DEA agent, a man he believed to be a leader of a Colombian-based drug trafficking organization. As outlined in the affidavit of DEA Special Agent Martin Griffin (attached as Exhibit A), upon arrival, the defendant was met at the plane by Panamanian authorities, who confirmed his identity. Aware that he was wanted, the Panamanian authorities denied the defendant admission to Panama, and he was escorted from the gate and turned over to the custody of DEA agents who were waiting on the tarmac. DEA agents then transported the defendant to the United States, where he was subsequently arraigned.

## Analysis

The defendant's fundamental argument is that he was illegally "abducted" from Panama in contravention of the extradition treaty between the United States and Panama, and therefor his indictment should be dismissed. Failing that, he claims that the government's conduct was nonetheless "outrageous," and that the Court should dismiss the case on that basis. Neither argument has merit.

As an initial matter, the defendant's underlying premise is incorrect, in that he was not abducted. The Panamanian government, exercising its sovereign right over whom to admit to their country, denied the defendant admission, expelled him and turned him over to the DEA. Such deportation proceedings are an internationally accepted procedure for delivering wanted individuals to another country without relying on the extradition process, even between countries with an

extradition treaty in place.[1]  The United States Supreme Court recognized this sovereign prerogative more than a century ago.  *See* Ker v. Illinois, 119 U.S. 436 (1886).

Unlike the present case, Ker involved an actual kidnaping of an Illinois fugitive in Peru, a country which had an extradition treaty with the United States.  Among Ker's arguments was that the extradition treaty inferred a right of asylum in Peru, barring his forcible removal unless pursuant to the treaty provisions.  In rejecting this claim, the Court addressed Peru's sovereign prerogatives, observing that,

> It will not be for a moment contended that the government of Peru could not have *ordered Ker out of the country on his arrival*, or at any period of his residence there. . . Nor can it be doubted that the government of Peru could, of its own accord, *without any demand from the United States, have surrendered Ker to an agent of the state* of Illinois, and that such surrender would have been valid within the dominions of Peru.  It is idle, therefore, to claim that, either by express terms or by implication, there is given to a fugitive from justice in one of these countries any right to remain or reside in the other . . .

*Id.* at 442 (emphasis added).

For this reason, there was nothing improper about the manner in which the DEA obtained custody of the defendant.  The extradition treaty and its procedures were never implicated because the United States never invoked the treaty, and the Panamanian authorities, exercising their sovereign right, chose to simply hand him over to the DEA.

However, even in cases in which custody is obtained in an allegedly illegal or improper

---

[1] For example, in 2004 Mexico chose to deport 135 wanted individuals to the United States rather than follow the procedures established for extradition pursuant to the treaty to which both countries are a party.  *See* U.S. Department of State, International Narcotics Control Strategy Report, 2005, *available at* http://www.state.gov/p/inl/rls/nrcrpt/2005/vol1/html/42364.htm.

fashion, the Supreme Court has been loathe to recognize that as a basis for dismissal.  *See* Ker, *supra*; United States v. Alvarez-Machain, 504 U.S. 655, 668-669 (1992) (DEA-sanctioned kidnaping of Mexican physician from Mexico to stand trial in U.S. for murder of a DEA agent did not violate treaty, therefore trial allowed to proceed.); Frisbie v. Collins, 342 U.S. 519 (1952) (Court upheld conviction of defendant who had been kidnaped in Chicago by Michigan officers and brought to trial in Michigan, finding no violation of Due Process Clause).  In addition to his asylum argument, Ker argued that his abduction and forcible return to Illinois violated his right to due process of law.  Despite the heavy-handed nature of his arrest and presentation to the court in Illinois, the Supreme Court rejected the application of constitutionally-based due process to the manner of production before the court, stating that,

> . . . for mere irregularities in the manner in which [the defendant] may be brought into custody of the law, we do not think he is entitled to say that he should not be tried at all for the crime with which he is charged in a regular indictment.

Ker, 119 U.S at 440.  More to the point, the Court concluded,

> There are authorities of the highest respectability which hold that such forcible adjudication is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense . . .

*Id.* at 444.

In 1992, the Supreme Court in Alvarez-Machain was presented with a somewhat different scenario, in that the United States was a knowing participant in the abduction, and the country from which the defendant was abducted protested.[2]  The court found that unless the forcible abduction

---

[2] In Ker, the U.S. had provided a messenger with a proper warrant to present to the Peruvian authorities in order to commence formal extradition proceedings, but the messenger on his own accord simply kidnaped Ker.  It should also be noted that Panama has not objected to the manner in which the

violated the extradition treaty in question, the Ker principle applied and the court would not inquire into how the defendant came before it. Alvarez-Machain, 504 U.S. at 663. The Court went on to find that abductions were not prohibited under our treaty with Mexico, and so Alvarez-Machain could face trial.

Our treaty with Panama was ratified in 1905, 18 years after the principle announced in Ker. *Treaty Between the United States and Panama for the Mutual Extradition of Criminals*, 34 Stat. 2851 (1905), attached hereto as Exhibit B. Simply put, the treaty contains no provision prohibiting abductions. See, U.S. v. Rafael Mejia, 448 F.3d 436, 443 (D.C. Cir. 2006) ("Like the U.S.-Mexico treaty, the U.S.-Panama treaty contains no prohibition against procuring the presence of an individual outside the terms of the treaty– let alone one barring the signatories from informally cooperating with each other as they did here in this case.").[3] Ignoring this plain language, the defendant is attempts to rely on language which he argues *infers* that abductions are prohibited. Specifically, he highlights passages from Articles I and IV of the treaty, ignoring the greater context.

For example, Article IV begins, "[w]here the arrest and detention of a fugitive are desired on telegraphic or other information *in advance of the presentation of formal proofs*, the proper course. . ."[4] (Emphasis added.) Taking "the proper course" out of this context, the defendant argues

---

defendant was turned over to the DEA.

[3]In Mejia, the defendant was located and detained in Panama City (after he had already been admitted into the country), brought to the airport, expelled as an "undesirable" and turned over to DEA custody. As in the present case, Mejia argued that the treaty with Panama "mandated compliance with laws regarding extradition."

[4]In it's entirety, Article IV reads:
"ARTICLE IV- Where the arrest and detention of a fugitive are desired on telegraphic or other information in advance of the presentation of formal proofs, the proper course in the United States shall be to apply to a judge or other magistrate authorized to issue warrants of arrest in extradition cases and present a complain on oath, as provided by the statutes of the United States. (Cont'd.)

that this bars obtaining custody in any other fashion. Given the context of the preceding words, however, it is clear that the section is limited to addressing the process for obtaining a provisional arrest warrant in advance of a formal extradition request. This in no way bars means or methods of obtaining custody other than by extradition, but merely sets out the procedure to be followed *should the treaty be invoked* by the country seeking custody. The defendant's reliance on Article I of the treaty is similarly misplaced, as it's language is substantially the same as in Article 3 of our treaty with Mexico- a treaty that the U.S. Supreme Court has already found does not prohibit abductions.[5] In sum, the defendant's attempt to distinguish this case from <u>Mejia</u> lacks context, for it is apparent given the finding of the Court of Appeals that the failure of the defense in that case to cite treaty language was not due to negligent omission, but rather the plain absence of such language.

---

When, under the provisions of this article, the arrest and detention of a fugitive are desired in the Republic of Panama, the proper course shall be to apply to the Foreign Office, which will immediately cause the necessary steps to be taken in order to secure the provisional arrest or detention of the fugitive. The provisional detention of a fugitive shall cease and the prisoner be released if a formal requisition for his surrender, accompanied by the necessary evidence of his criminality has not been produced under the stipulations of this Treaty, within two months from the date of his provisional arrest or detention."

[5] Article I of our treaty with Panama reads:

"ARTICLE I- The Government of the United States and the Government of the Republic of Panama mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum or be found within the territories of the other: Provided, that this shall only be done upon such evidence of Criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offense had been there committed."

Whereas Article 3 of our treaty with Mexico reads:

"ARTICLE 3- Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place or to prove that he is the person convicted by the courts of the requesting Party."

Because there is no prohibition of abductions in the treaty, explicitly or otherwise, Machain-Alvarez dictates that the Ker principle applies. Therefore, even if the DEA had actually abducted the defendant in this case, he is without a basis to complain.

As a fall back argument, the defendant argues that the conduct in this case "'shocks the conscience' and warrants a complete dismissal of the indictment. . ." Interestingly, in none of the cases cited by the defendant do the various courts find the conduct of the government sufficiently egregious to warrant dismissal. Suffice it to say, the manner of apprehension in this case pales in comparison, and should not shock this court's conscience.[6]

For the reasons stated above, the government respectfully requests that this Court deny the defendant's motion to dismiss.

Respectfully submitted,
KENNETH A. BLANCO
Chief, Narcotic and Dangerous Drug Section


   /s/ Matthew Stiglitz
Matthew R. Stiglitz, Trial Attorney
Teresa Wallbaum, Appellate Counsel
U.S. Department of Justice
Narcotic and Dangerous Drug Section
1400 New York Avenue, N.W. #800
Washington, D.C. 20530
(202) 305-3646
(202) 514-0483 (Fax)

---

[6] Nor, as the defense implies, did the government "circumvent its agreement with Mexico" by arresting the defendant in Panama. There is nothing in our treaty with Mexico or in international law that requires Mexican citizens be apprehended solely in Mexico.

CERTIFICATE OF SERVICE

    I hereby certify that on the 15th day of December, 2006, a copy of the foregoing opposition was filed electronically with the Court, which will forward a copy to Manuel Retureda, Esq., counsel for the defendant.

                                       ___/s/ *Matthew Stiglitz*_____
                                       Matthew R. Stiglitz