## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **CR. NO. 05-267 (RMC)** |
| | ) | |
| **FRANCISCO TORRES-GARCIA** | ) | |
| | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT TORRES-GARCIA'S MOTION TO DISMISS THE INDICTMENT FOR LACK OF VENUE

**COMES NOW** the United States of America, by and through the undersigned attorney, and hereby opposes defendant Francisco Torres-Garcia's ("Torres") motion to dismiss his indictment for lack of venue. Torres contends that venue under 21 U.S.C. § 963 is improper because, although "located outside of the United States at all pertinent times * * *, he allegedly formed a conspiracy with individuals located in Illinois and Texas, and overt acts in furtherance of that alleged conspiracy were committed in those States at his alleged direction." Mot. to Dismiss at 11. Moreover, because there were overt acts elsewhere in the United States, he contends that venue is not appropriate under 18 U.S.C. § 3238, which he interprets as applying only to conspiracies with no connection to the United States. In sum, Torres claims that a person operating outside the United States in a conspiracy to manufacture or distribute controlled substances outside the territory of any state has a Constitutional and statutory right to be tried only in a district where co-conspirators committed overt acts. Torres' arguments must fail.

Torres is charged with conspiracy to violate 21 U.S.C. § 959, which is unique in its express extraterritorial application and in its venue provision (21 U.S.C. § 959(c)) that

specifically designates the District of Columbia as an alternative venue forum. More specifically, Torres is charged with conspiracy to *extraterritorially* distribute or manufacture cocaine and methamphetamine intending or knowing that the drugs would be unlawfully imported into the United States in violation of 21 U.S.C. §§ 959, 960, and 963. Because § 959 can only be violated *outside* the territorial jurisdiction of the United States, the nature of the conspiracy is likewise inherently extraterritorial. Accordingly, venue is appropriate in the District of Columbia under Article III, § 2, cl. 3 of the Constitution, which gives Congress the exclusive right to designate venue for extraterritorial offenses. Congress has done so in § 959(c), designating that proper venue for § 959 offenses lies either in the United States District Court for the District of Columbia or in the district where the defendant is first brought. 21 U.S.C. § 959(c).

Alternatively, even if this Court elects not to read § 963 in conjunction with its charged object, § 959, venue is appropriate for both counts under 18 U.S.C. § 3238, which establishes venue for crimes committed outside the United States. Nothing in § 3238 precludes venue when *overt acts* in furtherance of an extraterritorial conspiracy occur in the United States.

In support of his position, Torres relies primarily on the non-binding decision in *United States v. Cobar*, 2006 WL 3289267 (D. D.C. Nov. 9, 2006). *Cobar* addressed two very narrow and distinct issues than the case at hand. Even if the decision were persuasive, it is not applicable to the facts of this case. Accordingly, venue is appropriate in this Court, and Torress' motion to dismiss should be denied.

FACTS

On July 21, 2005, the Grand Jury sitting in the District of Columbia indicted Torres for: (1) conspiring and attempting to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, intending and knowing that the drugs will be unlawfully imported into the United States, in violation of 21 U.S.C. §§963, 960(a)(1), 960(a)(3), 960(b)(1)(B)(ii), 960(b)(1)(H) and 18 U.S.C. § 2; and (2) conspiracy to launder monetary instruments, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2) and 1956(a)(3) and 18 U.S.C. § 2. That same day, United States Magistrate Judge Deborah Robinson issued an arrest warrant for Torres, who was residing in Mexico at the time. Docket Entry 2.

The discovery to date establishes that Torres is a citizen and resident of Mexico, who purposefully decided to conduct his drug operations from Mexico. As the leader of a cocaine and methamphetamine trafficking organization that imports these drugs into the United States, Torres has engaged in extensive operations outside the United States, including multiple meetings with co-conspirators and undercover Government sources in Colombia and Panama. Torres also admitted to having a source in Guatemala, who could assist in a plan to transport cocaine from Guatemala, through Mexico, and into the United States.

Although Torres was located outside the United States at pertinent times in the conspiracy, he directed his employees to engage in activity in the United States, including the delivery of drugs and laundering money in various American cities.

<u>ARGUMENT</u>

I.    STATUTORY OVERVIEW

It is well-established that Congress can criminalize extraterritorial behavior, especially if it has an effect on the United States. *Blackmer v. United States*, 284 U.S. 421, 436-38 (1932); *United States v. Bowman*, 260 U.S. 94, 98 (1922).  Under this authority, Congress has criminalized extraterritorial drug trafficking under two statutes: 21 U.S.C. § 959 of the Controlled Substances Act ("CSA") and 46 U.S.C. §§ 70501-70507 (formerly 46 U.S.C. App. §§ 1901-1904), the Maritime Drug Law Enforcement Act or "MDLEA."[1]  Section 959 is "intended to reach acts of possession, manufacture, or distribution committed outside the territorial jurisdiction of the United States," 21 U.S.C. § 959(c); the MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States."  46 U.S.C. § 70503(b).  Both statutes mandate that venue "shall" lie wherever the person enters the United States or in the United States District Court for the District of Columbia.  21 U.S.C. § 959(c); 46 U.S.C. § 70504(b).

Of relevance here, § 959 makes it unlawful

for any person to manufacture or distribute a controlled substance in Schedule I or II or flunitrazepam or listed chemical –

(1) intending that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States; or

(2) knowing that such substance or chemical will be unlawfully imported into the United

---

[1]  Recently, Congress enacted a third statute criminalizing conduct abroad that "would be punishable under section 841(a) of this title if committed within the jurisdiction of the United States," and if the person knowingly or intentionally provided, attempted to provide, or conspired to provide "anything of pecuniary value to any person or organization that has engaged or engages in terrorist activity."  21 U.S.C. § 960a.  This section does not contain a venue provision.

States or into waters within a distance of 12 miles of the coast of the United States.

21 U.S.C. § 959(a).  Section 963 makes it a crime to conspire or attempt to violate § 959.  In

other words, § 963 makes it illegal to conspire or attempt to manufacture or distribute a

controlled substance knowing or intending that it will be imported into the United States.  21

U.S.C. § 963.

II.    THE VENUE PROVISION IN § 959(c) IS CONSTITUTIONAL AS APPLIED TO
       TORRES

       A.    The Constitution Authorizes Congress to Designate Venue in Extraterritorial
             Offenses

       Article III, § 2, cl. 3 of the United States Constitution provides that "the trial of all crimes

shall be held in the state where the said crimes shall have been committed; *but when not*

*committed within any State, the trial shall be at such place or places as the Congress may by law*

*have directed*."  U.S. Const. art. III, § 2, cl. 3 (emphasis added).[2]  With respect to an

extraterritorial offense, Article III, § 2, cl. 3 "impose[s] no restriction as to the place of trial,

except that trial cannot occur until congress designates the place, and may occur at any place

which shall have been designated by congress previous to the trial."  *Cook v. United States*, 138

U.S. 157, 182 (1891); *see Reid v. Covert*, 354 U.S. 1, 7-8 (1957) (given its "obvious meaning,

§ 2 is applicable to criminal trials outside of the States as a group without regard to where the

offense is committed or the trial held").

---

[2] The Sixth Amendment similarly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. Amend. VI.  Once it is determined that an offense is extraterritorial, the Sixth Amendment's vicinage clause has no application. *Cook v. United States*, 138 U.S. 157, 183 (1891).

5

The Supreme Court has long recognized the importance of Congress' constitutional authority to designate venue in extraterritorial offenses: "'As crimes * * * may be committed on the high seas and elsewhere, out of the territorial jurisdiction of a state, it was indispensable that in such cases congress should be enabled to provide the place of trial.'" *Cook*, 138 U.S. at 182 (quoting Justice Story, 2 Story, Const. § 1781).[3]  From the early days of the Republic, Congress has enacted venue provisions governing extraterritorial offenses, and the Supreme Court has upheld its authority to do so under Article III, § 2, cl. 3.  *See, e.g., Reid,* 354 U.S. at 8 ("From the very first Congress, federal statutes have implemented the provisions of § 2 by providing for trial of murder and other crimes committed outside the jurisdiction of any State 'in the district where the offender is apprehended, or into which he may first be brought.'") (internal citations omitted); *Cook*, 138 U.S. at 181-82 (discussing the Act of April 30, 1790, which established that "the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may first be brought."); *Jones v. United States*, 137 U.S. 202, 211-12 (1890) (Congress had constitutional authority to designate venue for a murder committed on a "guano island" under 1856 Guana Islands Act); *United States v. Jackalow*, 66 U.S. 484, 486-87 (1861) (holding that Congress has the constitutional authority to designate venue for offenses that occur outside the jurisdiction of a state); *United States v. Dawson*, 56 U.S. 467, 484 (1853) (same).

---

[3] The text of Justice Story's commentaries can be found on-line at http://www.constitution.org/js/js_338.txt, although the quoted language appears under § 1775 of that document.

B.    § 959 Expressly Criminalizes an Extraterritorial Offense

Under this long standing Supreme Court jurisprudence, § 959, and its accompanying

conspiracy provision § 963, fall squarely within Congress's constitutional authority to designate

venue for crimes committed outside the territory of a state.  The clear language of § 959 and its

role within the statutory framework as a whole establish that § 959 is a modern, and specific,

exercise of Congress's constitutional authority to designate venue for extraterritorial offenses.

Because § 959 expressly applies extraterritorially and venue was established prior to trial, venue

in this Court, pursuant to § 959(c), is constitutional.  *Cook*, 138 U.S. at 182.  No further inquiry

is necessary.

As the express statutory language makes clear, § 959 "is intended to reach acts of

manufacture or distribution committed *outside the territorial jurisdiction of the United States*."

21 U.S.C. § 959(c) (emphasis added); *see United States v. King*, 552 F.2d 833, 850 (9th Cir.

1976) ("Adopted in 1970, the statute is expressly aimed at having extraterritorial effect.").

Inherent in § 959 and § 963 as charged is the prerequisite that the manufacturing or distribution

of the controlled substances or listed chemicals occurs *outside* the United States, with the intent

or knowledge that the drugs are destined for import *into* the United States.  21 U.S.C. §§ 959,

963.[4]  Therefore, it is impossible to violate § 959 (or conspire to violate § 959) without the very

essence of the crime occurring outside the United States.  Thus, by its express terms, a violation

_____

[4] Indeed, under the statutory language, *actual* importation of the drugs into the United
States is not required.  Moreover, it appears that a defendant could be guilty of violating § 959, or
conspiring to violate § 959, even if the drugs were not, in fact, destined for the United States, but
the defendant *intended* that destination or had false *knowledge* about the ultimate destination.
This further emphasizes the inherent extraterritorial nature of § 959 and, by extension, a
conspiracy under § 963 to violate § 959.

of § 959 (and by extension a conspiracy to violate § 959 under § 963) does not occur within the

territory of a state for venue purposes.

C.     A Conspiracy to Violate § 959 Triggers Venue Under § 959(c)

Given the unique nature of § 959, it is logical to read it in conjunction with § 963 when it

is the charged object of the conspiracy.  As Judge Roberts reasoned on this issue:

> The statute [21 U.S.C. § 963], by its terms, can reach conduct occurring outside of the
> United States.  In prosecutions for violations of § 959(a), 21 U.S.C. § 959(c) makes clear
> that venue is proper in the United States District Court for the District of Columbia.
> Extraterritorial conspiracies to violate § 959 should be prosecutable under § 963 in at
> least the same venues in which prosecutions for the underlying substantive could be
> maintained.

*United States v. Mejia*, 2002 WL 33929076 at *3 n.3 (D. D.C. 2002) (citing *United States v.*

*Zabaneh*, 837 F.2d 1249 (5th Cir. 1988)).[5]  Moreover, as courts have similarly held in the related

context of determining extraterritorial jurisdiction, "a conspiracy to commit an offense is closely

related to the offense itself."   *United States v. Noriega*, 746 F. Supp. 1506, 1516 (SD FL 1990)

(citing  *Chua Han Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir.1984); *United States v.*

*Baker*, 609 F.2d 134, 139 (5th Cir.1980)).  Accordingly, "courts have regularly inferred the

extraterritorial reach of the § 963 conspiracy statute on the basis of a finding that the substantive

statutes apply abroad." *Noriega*, 746 F. Supp at 1516.  This same analysis applies here – because

the object of the conspiracy (§ 959) is specifically extraterritorial in nature, the conspiracy itself

is extraterritorial.  Against this backdrop, it is beyond cavil that § 959 and a conspiracy to violate

---

[5] At least one other judge in this District has adopted a similar analysis.  In *United States v. Martinez*, No. 03-331 (D. D.C. ), Judge Kollar-Kotelly held that the specific venue provision in § 959 can change a venue analysis when other crimes are charged.  *See* Memorandum Denying Motion to Dismiss for Lack of Venue (Attach. 1).  Even though there is no substantive § 959 charge in this case, the same logic applies.

§ 959 under § 963 are extraterritorial offenses under Article III, § 2, cl. 3.

In his motion, Torres relies overwhelmingly on the recent decision in *Cobar*.  Mot. To Dismiss at 3-4.  This decision, of course, is not binding precedent.  *In re Executive Office of the President*, 215 F.3d 20, 24 (D.C. Cir.2000) ( "District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the law of the district.") (internal quotations omitted); *FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 10 n.3 (D.D.C. 2006) ("one district court decision is not binding on another district court") (internal quotations omitted).  Indeed, this district now has a split of opinion on this issue, as Judge Lamberth's decision in *Cobar* conflicts with Judge Roberts' opinion in *Mejia*.

In any event, the district court's decision in *Cobar* reading § 963 in isolation is flawed, and this Court should decline to follow that approach.  To begin, *Cobar* does not address the Government's argument about the unique nature of § 959, nor does it address or distinguish *Noriega*, *Chua Han*, or *Baker*.  Instead, the *Cobar* court relied exclusively on domestic conspiracy cases to conclude that the object is irrelevant.  *Cobar*, *supra* at *3.  The logic of these cases does not apply, however, when the object of the conspiracy is inherently extraterritorial because the crime by definition occurs outside the territory of the United States.  Applying the domestic conspiracy cases fails to give effect to this distinction, which was clearly significant to Congress, as evidenced by the passage of a specific criminal provision (§ 959) to target such crimes.[6]

---

[6] Moreover, the cases cited in *Cobar* do not, in fact, stand for the proposition that an object of a conspiracy cannot "play any role whatsoever in a determination of where venue for the prosecution of [a] criminal case properly lies."  Mot. to Dismiss at 4.

D.     The Commission of Overt Acts in the United States is Not Determinative

Torres relies heavily on the commission of overt acts within the United States by his unindicted co-conspirators.  Mot. to Dismiss at 13-15.  The commission of overt acts in the United States, however, is not exclusively determinative of venue when the crime or elements of the crime occurs overseas.  *See, e.g. United States v. Jensen*, 93 F.3d 667, 671 (9th Cir.1996) (Fletcher, J., concurring) ("That the defendants also operated their vessels within the District of Alaska does not remove section 3238's applicability – the alleged offense was still 'begun or committed' upon the high seas * * *") (citing 8A James A. Moore et al., Moore's Federal Practice ¶ 18.06[3] (2d ed.1995)) (additional citations omitted); *United States v. Levy Auto Parts of Canada*, 787 F.2d 946, 950-52 (4th Cir. 1986) (finding venue appropriate under § 3238 when conspiracy was "essentially foreign," even when some overt acts occurred in United States); *United States v. Erwin*, 602 F.2d 1183, 1185 (5th Cir.1979) ("that venue may also be appropriate in another district will not divest venue properly established under § 3238"); *United States v. Bin Laden*, 91 F. Supp. 2d 600,  613 n.23 (SDNY 2000) (collecting cases).

E.     The Conspiracy Provision Does Not Alter the Extraterritorial Nature of the Offense

Torres' argument, and his reliance on domestic conspiracy cases, overlooks the unique nature of the object charged in this case.  The express extraterritorial nature of § 959 and its inclusion of a specific venue provision designating the District of Columbia as one of two alternative venues changes the venue analysis.  Failure to consider these unique factors results in an incomplete analysis.

**1. Section 963 cannot be read in isolation.**  First, Torres' legal analysis, and the

decision in *Cobar*, works only so long as one reads § 963 in isolation.  Such an interpretation

defies the plain language of § 963, which reads:

> Any person who attempts or conspires to commit any offense defined in this subchapter
> shall be subject to the same penalties as those prescribed for the offense, the commission
> of which was the object of the attempt or conspiracy.

21 U.S.C. § 963.  This language has two logical consequences.  First, by definition, § 963 cannot

stand on its own.  It must be read in conjunction with the underlying substantive offense, here

§ 959.  Second, § 963 treats a conspiracy and/or attempt as coterminous with the underlying

substantive offense.[7]  When the two provisions are read together, as they must be, it is clear that

Cobar is charged with conspiring to commit an *extraterritorial* offense.  *Cf. Noriega*, 746 F.

Supp. At 1516.  Consequently, Torres' reliance on cases analyzing domestic drug conspiracies,

including the *Cobar* decision, is misplaced.

**2. The *locus delicti* of the crime is extraterritorial**.  Torres' conspiracy analysis is also

unpersuasive because it runs counter to Supreme Court analysis in *United States v. Rodriguez-*

*Moreno*.[8]  In *Rodriguez-Moreno*, the Court rejected a conceptually similar effort to bifurcate two

interrelated crimes (kidnaping and the use of a gun during a crime of violence) for venue

purposes.  *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999).  In that case, the Court held

---

[7] The district court in *Cobar* erred when it found that § 963 was merely a penalty
provision.  *Cobar supra* at *3.  As the text of § 963 makes clear, it criminalizes an attempt or
conspiracy to violate an offense in the same sub-chapter, which includes § 959.  21 U.S.C. § 963.

[8] *Rodriguez-Moreno* is not directly on point, because that case involved a statutory
provision that did not designate the venue location, which is a sharp contrast to the instant case.
*Rodriguez-Moreno*, 526 U.S. at 279 n.1.  Nonetheless, the Court's general analysis is instructive
in regards to Torres § 963 argument.

11

that the kidnaping charge was the "crime of violence" that made the use of a gun illegal under 18

U.S.C. § 924(c).  The Court explained:

> the *locus delicti* [of the charged offense] must be determined from the nature of the crime
> alleged and the location of the acts constituting it.  In performing this inquiry, a court
> must initially identify the conduct constituting the offense (the nature of the crime) and
> then discern the location of the commission of the criminal acts.

*Rodriguez-Moreno*, 526 U.S. at 279 (internal citations and quotations omitted).  Here, the *locus*

*delicti* of the conspiracy is extraterritorial – Torres engaged in activity, including the formation of

the conspiracy, while outside the United States, and the object of the conspiracy was to

manufacture and distribute controlled substances outside the United States, knowing or intending

that they be imported into the United States.  Moreover, as noted above, because this language

does not require successful importation of the drugs into the United States, the *locus delicti* of the

crime must be extraterritorial.

    To the extent that Torres relies upon *Rodriguez-Moreno*, he conflates the commission of

the criminal act with the commission of overt acts.  Moreover, even assuming overt acts may be

considered as part of the *locus delicti* analysis under *Rodriguez-Moreno*, Torres cannot

selectively choose only those overt acts that occurred in the United States.  The evidence

produced to date shows that Torres committed numerous overt acts *outside* the United States.

Thus, in light of *Rodrigeuz-Moreno*, the § 963 offense, as charged in this case, is extraterritorial

for purposes of determining venue.

    **3. Torres formed the conspiracy abroad.**  Indeed, Torres' own analysis is consistent

with the formation of the conspiracy abroad, as that is where he resided during the conspiracy,

regardless of where his co-conspirators may have operated.  Thus, even if Torres' domestic

conspiracy cases are applicable,[9] they only serve to undercut his argument.  For example, in *Hyde v. United States*, the Supreme Court held that:

> "when any offense against the United States is begun in one judicial circuit and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, and determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

*Hyde v. United States*, 225 U.S. 347, 360 (1912) (quoting *Hyde v. Shine*, 199 U.S. 62 (1905)).[10]

Because, at a minimum, Torres commenced the crime abroad, the conspiracy is at least partially extraterritorial and therefore properly venued in the District of Columbia.  Similarly, the Supreme Court's decision in *Burton v. United States*, 202 U.S. 344 (1906), hurts Torres more than it helps him.  In that case, Supreme Court held that:  "The constitutional requirement is that the *crime* shall be tried in the state and district where committed; not necessarily in the state or district where the party committing it happened to be at the time."  202 U.S. at 387 (emphasis added).  As noted above, the *crime* occurred overseas – Torres conspired to manufacture or distribute controlled substances outside the territory of the United States.  The fact that some members of the conspiracy committed overt acts in the United States does not make the conspiracy – or its object – domestic.

---

[9] The Government reiterates that once the "offense" is deemed extraterritorial, the venue provision is constitutional and no further analysis is necessary or appropriate.  *Cook*, 138 U.S. at 182.  Nonetheless, given Torres' reliance on domestic conspiracy cases, the Government argues, in the alternative, that these cases also support venue in the District of Columbia.

[10] In *Hyde v. Shine*, the Court held that "we do not wish to be understood as approving the practice of indicting citizens of distant states in the courts of this District [of Columbia], where an indictment will lie in the state of the domicil of such person, unless in exceptional cases where the circumstances seem to demand that this course shall be taken." *Shine*, 199 U.S. at 78.  By passing § 959, Congress has identified circumstances under which prospective indictment in the District of Columbia is proper.

13

Torres also fails to apprehend that none of these domestic conspiracy cases *mandate*s venue in a particular district and most of them are intended to broaden the scope of venue, allowing multiple venue locations from which the Government may choose. Thus, even under these cases, venue in the District of Columbia would be appropriate, because this Court is a possible venue for §963/ §959 drug trafficking conspiracies, which the Government may select. *See United States v. Smith*, 452 F.3d 332, 334 (4th Cir. 2006) ("venue rules do not require the government to prosecute in any particular district when venue lies in multiple locations"); *United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000) (holding venue proper in Eastern District of Virginia notwithstanding that many of the events related to the drug conspiracy occurred outside Virginia); *United States v. Williams*, 589 F.2d 210, 213 (5th Cir. 1979) ("The venue statutes are not mutually exclusive, and a suggestion that venue is proper under § 3237(a) will not serve to divest venue from another judicial district if venue is proper in that district under § 3238.").

III.    ADDITIONALLY, THIS COURT HAS VENUE UNDER 18 U.S.C. § 3238

A.    18 U.S.C. § 3238 Has Broad Application

The history of a statute establishing extraterritorial venue dates back to the first Congress. *See Cook*, 138 U.S. at 182; Justice Story, 2 Story, Const. § 1781. From its inception, the statute predicated venue on the physical custody of the defendant, establishing venue where the person was "found," "arrested," or "first brought." Courts agree that, in using these terms, "Congress had restraint in mind." *United States v. Erdos*, 474 F.2d 157, 160 (4th Cir. 1973). The first clause of § 3238 incorporates these historical concepts by providing that:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought.

14

18 U.S.C. § 3238.

In 1963, Congress added a second clause to § 3238, providing that:

but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of last known residence of the offender or of any one of two or more joint offenders, of, if no such residence is known, the indictment or information may be filed in the District of Columbia.

18 U.S.C. § 3238. Courts have consistently held that the two clauses in § 3238 must be read in the disjunctive. *United States v. Gurr*, 2006 WL 3526690 (D.C. Cir. Dec. 8, 2006); *United States v. Layton*, 855 F.2d 1388, 1410-11 (9th Cir.1988), *rev'd on other grounds*; *United States v. Fraser*, 709 F.2d 1556 (6th Cir.1983); *United States v. McRary*, 616 F.2d 181, 185 (5th Cir.1980); *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 29 (D. D.C. 2000); *United States v. Hay*, 376 F.Supp. 264, 268 n. 2 (D.Colo.1974); *see also* Wright 2 Fed.Prac. & Proc.Crim.2d § 304 (West Supp.1999). Thus, when the "defendant is indicted *before* he is brought into the United States, he may be tried in the district in which he was indicted regardless of whether it is the district in which he is first brought into the United States." Charles A. Wright & Arthur R. Miller, 2 Fed.Prac. & Proc.Crim.2d § 304 (West 1982) (emphasis added); *see also Gurr, supra* at *8; *Hsin-Yung*, 97 F. Supp. 2d at 29.

      B.    Section 3238 is Not Limited to Crimes Committed Wholly Outside the United States

Torres contends that venue is improper because § 3238 "is only applicable in cases where the criminal activity did not occur within the geographical limits of any State or District." Mot. at 12. Torres supports his analysis with the "clear" language of the statute and the Second Circuit's decision in *United States v. Gilboe*, 684 F.2d 235 (2d Cir. 1982). Mot. to Dismiss at 12-13. Neither argument is persuasive.

**1. The statutory text refutes Torres' argument.** To begin, the text of § 3238 does not support Torres' plain language argument. The text of the statute provides that "[t]he trial of all offenses *begun* or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district." 18 U.S.C. § 3238 (emphasis added). The use of the word "begun" clearly indicates that § 3238 applies to cases even when the crime has a domestic component. The fact that the section is entitled: "Offenses not committed in any district" does not alter this conclusion. It is beyond cavil that "the title of a statute * * * cannot limit the plain meaning of the text." *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) (internal citations and quotations omitted). Torres' argument is likewise inconsistent with the legislative history of § 3238, which:

> illustrates the permissive nature of the language providing for the place for the return of indictments. That language was intended to relieve the prosecution of the burden of demonstrating that an offender who remained without the territorial jurisdiction of the U.S. was a "person fleeing from justice" under 18 U.S.C. § 3290, for purposes of tolling any applicable statute of limitations."

*McRrary*, 616 F.2d at 185.

**2. *Gilboe* is unpersuasive and inconsistent with other jurisprudence.** Similarly, Torres' reliance on *Gilboe* to support his analysis is misplaced for several reasons. First, the language in *Gilboe* upon which Torres relies is *dictum*. *See, Levy Auto Parts of Canada*, 787 F.2d at 950-51. Second, *Gilboe's* analysis is flawed because it relies primarily on the title of the section and does not analyze the plain language of the provision or its historical purpose. Third, and most telling, *Gilboe* is inconsistent with the rulings of every other circuit that has addressed this issue. *See, e.g., Jensen*, 93 F.3d at 671 (Fletcher, J., concurring) ("That the defendants also operated their vessels within the District of Alaska does not remove section 3238's applicability –

16

the alleged offense was still 'begun or committed' upon the high seas * * *") (citing 8A James A.

Moore et al., Moore's Federal Practice ¶ 18.06[3] (2d ed.1995)) (additional citations omitted);

*Levy*, 787 F.2d at 950-52 (finding venue appropriate under § 3238 when conspiracy was

"essentially foreign," even when some overt acts occurred in United States); *Erwin*, 602 F.2d at

1185 ("that venue may also be appropriate in another district will not divest venue properly

established under § 3238"); *Bin Laden*, 91 F. Supp. 2d at 613 n.23 (collecting cases).

Finally, the analysis in *Gilboe*, especially as applied to international drug trafficking,

renders § 959 a virtual nullity and creates an absurd result.  Section 959 requires the Government

to prove that the drugs were destined for the United States as an element of the offense.  Thus, in

most § 959 cases, including a conspiracy to violate § 959, there will be some overt acts in the

United States.  This is unavoidable, because drug traffickers must locate purchasers for their

wares and must resolve the logistical problems of drug trafficking – transportation, security, and

payment.  Indeed, according to Torres' theory, any minimal contact is sufficient; thus, for

example, a drug trafficker operating overseas who even *receives* a single phone call any place in

the United States can claim venue in that district.  This construction is inconsistent with the

acknowledged Congressional intent in passing the Comprehensive Drug Abuse Prevention and

Control Act of 1970, including § 959, to "have a broad sweep in dealing with all aspects of drug

abuse."  *United States v. Baker*, 609 F.2d 134, (5th Cir. 1980).

**3. Torres' theory permits foreign defendants to manipulate venue.**  In this vein,

Torres' theory creates an absurd result, because it allows an overseas defendant – with no

residence in or personal connection to the United States – to manipulate venue, even though a

change of venue does not advance traditional public policy concerns.[11]  Primary among these

concerns was the Founding Father's distaste for the English King's practice of  "transporting us

beyond Seas to be tried for pretended offences." *United States v. Cabrales*, 524 U.S. 1, 6 & n.1

(1998).  Historically, this concern has evolved to a general principle that a defendant should not

be haled into a court far from where the offense was committed.  In this case, however, Torres

effectively concedes, as he must, that this first public policy concern does not apply.  Torres does

not dispute that he can be haled into court from Mexico for his crimes, he simply contends it

must be in a different United States district court.  In a case such as this, there is no constitutional

difference between venue in Chicago (where Torres has never been) and the District of

Columbia.  Similarly, Torres cannot articulate why venue in Chicago or Houston advances the

protection of his 6th Amendment vicinage rights.  Torres – a Mexican citizen and resident – does

not have a stronger vicinage claim in Chicago than in the District of Columbia when his

participation in the crime occurred principally in Mexico.

---

[11] Because the traditional public policy concerns are not present in cases in which a foreign resident acts overseas to commit a crime, even if there are overt acts or effects within the United States, the rule of construction announced in *United States v. Johnson,* should not apply.  *United States v. Johnson*, 323 U.S. 273, 276 (1944) (If statute "equally permits the underlying spirit of the consrutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.").  In any event, both the terms or spirit of the Controlled Substances Act would be injured if Torres' interpretation were adopted.

C.    The *Cobar* Decision Does not Mandate Dismissal for Lack of Venue

In addition to the Second Circuit's dicta in *Gilboe*, Torres relies heavily on Judge

Lamberth's recent decision in *Cobar. Cobar*, which of course is not binding precedent, does not

mandate dismissal.  In *Cobar*, the indictment against the lead defendant (Cobar) was dismissed

because he was in the United States when he formed the conspiracy.  The district court reasoned

that, because conspiracy was the charged crime, Cobar committed the crime in the United States,

specifically Nevada, and venue was appropriate in that district.  *Cobar, supra* at * 2,4.

Regarding the second defendant, Gonzales-Largo,  the court concluded that venue was improper

because Gonzales-Largo had been indicted in Nevada and thus was "first brought" into that

jurisdiction.  *Cobar, supra* at * 5.

As a legal matter, the Government contends that the *Cobar* decision regarding 18 U.S.C.

§ 3238 is incorrectly decided.  Notably, the court in *Cobar* does not cite a single case to support

its holding that a defendant is "first brought" into a district when he is *indicted* in that district.

Courts have consistently held the opposite.  *See, e.g., United States v. Feng*, 277 F.3d 1151, 1155

(9th Cir. 2002) (word "brought" under the statute means "first brought into a jurisdiction [from

outside the United States' jurisdiction] while in custody."); *United States v. Catino*, 735 F.2d 718,

724 (2d Cir. 1984) ("'first brought' applies only in situations where the offender is returned to

the United States in custody"); *Erdos*, 474 F.2d at 160 (by using term "first brought" Congress

had restraint in mind"); *Chandler v. United States*, 171 F. 2d 921, 933 (1st Cir. 1949) (where

"accused is first taken under custody and landed is the district into which the accused is 'first

19

brought'").[12]  Moreover, the district into which the person is first brought is irrelevant when, as

the case of Gonzales-Largo (and Torres), the defendant was properly indicted in the District of

Columbia *before* he is brought into the United States.  *See, e.g. United States v. Gurr*, 2006 WL

3526690 (D.C. Cir. Dec. 8, 2006); *Layton*, 855 F.2d at 1410-11;  *McRary*, 616 F.2d at 185.

Moreover, as a factual matter, both defendants in the *Cobar* case were situated differently

than Torres, and *Cobar*, to the extent it even applies, is distinguishable on that basis.  Torres was

not in the United States when he formed the conspiracy, so the rationale in *Cobar* is inapplicable

to this case.  Nor was Torres indicted elsewhere in the United States before being indicted in the

District of Columbia, so the court's secondary holding in *Cobar* is similarly inapplicable.[13]

Notably, Judge Lamberth nowhere holds in *Cobar* that § 3238 applies only to crimes committed

wholly overseas.[14]  Given the similarities that do exist between Gonzales-Largo and Torres – two

men who operated outside the United States but had contact with co-conspirators in the United

States – the fact that Judge Lamberth did not dismiss on this ground is telling, and undercuts

Torres' reliance on that decision.

For the foregoing reasons, the United States respectfully submits that venue for the

---

[12] Moreover, the court's decision in *Cobar* failed to acknowledge that the Nevada indictment was: (1) on a different statutory charge and (2) was dismissed prior to the issuance of an indictment in the District of Columbia and prior to the defendant being physically brought into the United States.  Thus, any possible effect of a Nevada indictment under 21 U.S.C. § 846 was nullified once it was dismissed.

[13] Torres was indicted in this District on July 21, 2005.  On September 6, 2005, Torres was indicted in the Northern District of Illinois for conspiring to violate 21 U.S.C. § 841, in violation of 21 U.S.C. § 846, but that subsequent indictment does not alter the analysis here.

[14] At most, the decision finds that Gonzales-Lugo committed his portion of the crimes wholly outside the United States.  *Cobar, supra* at *5.

conspiracy to violate 21 U.S.C. § 959 is proper in the District of Columbia given the

extraterritorial nature of the object of the conspiracy and § 959's specific venue provision.

Additionally, venue in this Court is appropriate for the drug conspiracy under 18 U.S.C. § 3238,

which applies to offenses commenced or committed overseas.  Because Garcia conspired to

import drugs into the United States while outside the United States and because he was indicted

prospectively in the District of Columbia, § 3238 establishes venue in this Court.


Respectfully submitted, this 15th day of December, 2006.



Kenneth A. Blanco, Chief
Narcotic and Dangerous Drug Section


_____
Matthew Stiglitz
Trial Attorney

*/s/ Teresa A. Wallbaum*
Teresa A. Wallbaum
Appellate Counsel
U.S. Department of Justice
Criminal Division
Narcotic and Dangerous Drug Section
(202) 616-5193

## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of December, 2006, a copy of the foregoing

Government's Opposition to Torres-Garcia's Motion to Dismiss Indictment for Lack of Venue

was served electronically upon counsel of record.


_/s/ Teresa A. Wallbaum_____
Teresa A. Wallbaum