UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. Case No.:  05-267 (RMC) |
| FRANCISCO TORRES-GARCIA | |

### DEFENDANT TORRES-GARCIA'S MOTION FOR RECONSIDERATION AND MEMORANDUM OF POINTS AND AUTHORITIES

**COMES NOW DEFENDANT, Francisco Torres-Garcia** (hereinafter referred to as "Mr. Torres-Garcia"), by and through undersigned counsel, and respectfully requests that this Court reconsider its denial of Mr. Torres-Garcia's previously filed Motion to Dismiss the Indictment for Lack of Venue [ECF No. 18] and Motion to Dismiss the Indictment for Lack of Jurisdiction [ECF No. 22].[1]  In support of this motion, Mr. Torres-Garcia submits the following:

### BACKGROUND

On July 21, 2005, the government filed a two-count indictment in this case charging only Mr. Torres-Garcia with violation of various subsections of 21 U.S.C. §§ 960 and 963 and 18 U.S.C. §2, as well as violation of various subsections of 18 U.S.C. §§ 2 and 1956 (hereinafter referred to as the "D.C. indictment").[2]  On August 7, 2005, Mr. Torres-Garcia flew to Panama.[3]  As he was deplaning, Mr. Torres-Garcia was detained by DEA agents who restrained him of his

---

[1] Mr. Torres-Garcia incorporates, by reference, any and all arguments previously set forth in his Motion to Dismiss the Indictment for Lack of Venue, Motion to Dismiss the Indictment for Lack of Jurisdiction and Supplemental Memorandum in Support of his Motion to Dismiss for Lack of Venue, as well as all arguments made before this Court at the January 3, 2007 hearing.
[2] As stated in his earlier pleadings, Mr. Torres-Garcia earnestly maintains that he is not guilty of any criminal conduct, in the District of Columbia or elsewhere, but for the purposes of argument shall assume the facts as alleged by the government in both this District and the Northern District of Illinois.
[3] Upon information and belief, Panama is one of the Latin and/or South American countries receiving large amounts of U.S. aid under "Plan Colombia", and, is therefore, required pursuant to its terms to cooperate with the United States in the area of international extradition.

1

liberty, escorted him out a side door of the passenger bridge connecting his plane to the gate, down a flight of stairs and onto the tarmac to an awaiting car that whisked him to an awaiting plane. Once on that plane, Mr. Torres-Garcia was flown to the United States military base at Guantanamo Bay, Cuba against his will.[4] After a brief stay at Guantanamo Bay, Mr. Torres-Garcia was involuntarily transported by officials of the United States government to Fort Lauderdale, Florida. Mr. Torres-Garcia maintains that while in Fort Lauderdale, he was processed by the Bureau of Immigration and Customs Enforcement.[5] Thereafter, he was involuntarily transported to the District of Columbia and first appeared before this Court on August 9, 2005.[6]

In addition to the indictment filed in this case, the government also filed a criminal complaint in the Northern District of Illinois charging Mr. Torres-Garcia and four co-defendants with violation of 18 U.S.C. §1956 and violation of 21 U.S.C. §846 (hereinafter referred to as the

---

[4] The Government asserts that Mr. Torres-Garcia was originally detained by agents of the Panamanian government who escorted him to the tarmac and into the custody of DEA agents. Mr. Torres-Garcia is unable to confirm that Panamanian officials were involved in his detention, and remains under the impression that it was, in fact, DEA agents who originally detained him on Panamanian soil. In either event, all parties agree that U.S. DEA agents placed Mr. Torres-Garcia in an awaiting vehicle on the tarmac and drove him to a DEA plane in another section of Tocumen Airport in Panama City that day. Nonetheless, Mr. Torres-Garcia specifically reserves all rights to assert, at a later date, that his arrest violated the Mansfield Amendment.

[5] The Affidavit of DEA Special Agent Martin Griffin, filed by the government on January 6, 2006 [ECF No. 10], merely states that the plane carrying Mr. Torres-Garcia from Guantanamo Bay, Cuba to Washington, DC stopped in Fort Lauderdale, Florida to "refuel". Affidavit of Martin Griffin, ¶ 8. Mr. Torres-Garcia submits that it would be highly unusual for a plane to require refueling approximately 130 miles into an approximately 1100-mile flight and that the real reason his plane landed in Fort Lauderdale was so that he could be processed.

[6] Court records indicate that the arrest warrant issued for Mr. Torres-Garcia by this Court was executed on August 9, 2005 (while he was in the District of Columbia), a full two days after he was first taken into custody by DEA agents in Panama. In addition, the affidavit of DEA Special Agent Martin Griffin makes clear that the DEA was involved in Mr. Torres-Garcia's arrest in Panama and that the Panamanian authorities merely "agreed to assist the DEA". Affidavit of Martin Griffin ¶ 5. While the Court of Appeals held in *United States v. Mejia*, that *post-arrest* transfers of defendants from foreign authorities to officers of the United States did not violate the Mansfield Amendment, that ruling did not apply to *pre-arrest* transfers. 448 U.S. F.3d 436, 443 (D.C.Cir. 2006). In light of the facts surrounding Mr. Torres-Garcia's detention and subsequent arrest, his *pre-arrest* transfer to DEA agents on foreign soil constituted a violation of the Mansfield Amendment. As stated above, Mr. Torres-Garcia reserves all rights to assert, at a later date, that his arrest violated that Amendment.

"Illinois complaint").[7] Attached to that Illinois complaint was an affidavit detailing alleged criminal activity by Mr. Torres-Garcia and his co-defendants (hereinafter referred to as the "Illinois affidavit"). A few weeks later, on September 6, 2005, the government filed a single count, "bare bones" indictment in the Northern District of Illinois charging Mr. Torres-Garcia and two of his original four co-defendants with violation of 21 U.S.C. §846 (hereinafter referred to as the "Illinois indictment").[8]

On November 17, 2006, Mr. Torres-Garcia filed his Motion to Dismiss the Indictment for Lack of Venue [ECF No. 18] (hereinafter referred to as Mr. Torres-Garcia's "Motion to Dismiss for Improper Venue"). Court records indicate that his Motion to Dismiss the Indictment for Lack of Jurisdiction was filed on November 20, 2006 [ECF No. 20] (hereinafter referred to as Mr. Torres-Garcia's "Motion to Dismiss for Lack of Jurisdiction").[9] On December 15, 2006, the government filed its oppositions to those motions (ECF Nos. 25, 26 and 28]. A hearing on Mr. Torres-Garcia's motions was held on January 3, 2007. At that time, the Court took Mr. Torres-Garcia's motions under advisement, and directed Mr. Torres-Garcia to file any supplement to his pleadings by February 13, 2007. Mr. Torres-Garcia filed a Supplement to his Motion to Dismiss the Indictment for Lack of Venue on February 13, 2007 [ECF No. 30] (hereinafter referred to as Mr. Torres-Garcia's "Supplemental Memorandum"), to which the government filed a response

---

[7] *United States v. Javier Mendez-Garcia, et al.,* Case No. 05-cr-695. Two of Mr. Torres-Garcia's co-defendants listed on that Complaint are allegedly situated in Colombia.

[8] *United States v. Javier Mendez-Garcia, et al.,* Case No. 05-cr-695; the two Colombian defendants named on the original Complaint were not included in this Indictment. In addition, the Illinois Indictment appears to be based upon the same set of facts as the Indictment in this case.

[9] Mr. Torres-Garcia's previous counsel, filed a Motion to Dismiss Case on December 19, 2005 [ECF No. 9]. The government filed an Opposition to that Motion on January 6, 2006 [ECF No. 10] (and attached an affidavit executed by DEA Special Agent Martin Griffin regarding Mr. Torres-Garcia's detention in Panama, etc.), to which Mr. Torres-Garcia filed a Reply on January 13, 2006 [ECF No. 11].

3

on February 23, 2007 [ECF No. 32].[10]

On April 24, 2007, this Court issued an Order and Memorandum Opinion denying Mr. Torres-Garcia's motions [ECF Nos. 34 and 35]. In its Memorandum Opinion, the Court set forth its reasons for denying Mr. Torres-Garcia's pleadings and conducted an analysis of both jurisdiction and venue in Mr. Torres-Garcia's case. With regard to venue, the Court analyzed 21 U.S.C. §§959(c) and 963 (hereinafter referred to as "§959(c)" and "§963" respectively) as well as 18 U.S.C. §3238 (hereinafter referred to as "§3238"). As the Court correctly noted in the "Background Facts" section of its Memorandum Opinion, Mr. Torres-Garcia has been charged in Count 2 of the indictment with violation of certain provisions of 18 U.S.C. §1956 (hereinafter referred to as "§1956"). Although §1956 has a special venue provision, as discussed by Mr. Torres-Garcia in his Supplemental Memorandum, the Court's Memorandum Opinion is silent as to any venue considerations pursuant to §1956.

## ARGUMENT

**I.    Jurisdiction**

**A. "Extradition"**

As set forth in his Motion to Dismiss for Lack of Jurisdiction, Mr. Torres-Garcia maintains that his abduction from Panama violated the terms of the U.S-Panama Extradition Treaty (hereinafter referred to as the "U.S.-Panama treaty"). In its Memorandum Opinion, the Court opined that Mr. Torres-Garcia's twofold argument (1) failed to adequately distinguish between the U.S.-Panama treaty and the U.S.-Mexico Extradition Treaty which was the subject of *United States v. Alvarez-Machain,* 504 U.S. 655 (1992) (hereinafter referred to as the "U.S.-Mexico treaty") and (2) failed to demonstrate extraordinary circumstances warranting dismissal.

---

[10] Mr. Torres-Garcia shall hereinafter refer to his Motion to Dismiss for Improper Venue, Motion to Dismiss for Lack of Jurisdiction and Supplemental Memorandum, collectively, as Mr. Torres-Garcia's "pleadings" and to the government's oppositions/responses thereto, collectively, as the government's "pleadings".

4

Mr. Torres-Garcia respectfully disagrees.

### i. *Alvarez-Machain*

In rendering its decision, this Court has clearly relied upon the Supreme Court's holding in *Alvarez-Machain*.[11] As the Court noted, the Supreme Court in *Alvarez-Machain* "reviewed the text of the U.S.-Mexico treaty and the *historical context* in which it was adopted."[12] As set forth below, the historical context of the U.S.-Mexico treaty has changed drastically since 1992, the year the decision in *Alvarez-Machain* was rendered. Mr. Torres-Garcia submits that world events and the "norms of international law" over the last fifteen years require a different interpretation of international extradition treaties than that offered in the *Alvarez-Machain* holding.

First, it should be noted that the Supreme Court's decision in *Alvarez-Machain* was anything but uncontroversial. Many in the international community considered *Alvarez-Machain* to violate international standards of good faith. The holding resonated throughout the international community and resulted in immediate action by the executive branch of the United States government to assure Mexico that it would respect its sovereignty despite the ruling, as well as diplomatic negotiations between the two nations after Mexico filed a protest and demanded renegotiation of the extradition treaty.[13]

The United States Department of Justice is keenly aware of the international concerns about abuse of foreign sovereignty and territorial integrity which arose after the Supreme Court issued its decision in *Alvarez-Machain*. §9-15.610 of the United States Attorneys' Criminal Resource Manual directs that prosecutors must notify the Department of Justice's Office of

---

[11] "This issue is controlled by the Supreme Court's decision in *United States v. Alvarez-Machain*…" Memorandum Opinion at 3.
[12] Memorandum Opinion at 4.
[13] *The New York Times*, June 17, 1992. Two years later, the United States and Mexico executed a Treaty to Prohibit Transborder Abductions. Unfortunately, that treaty was never sent to the United States Senate for ratification.

International Affairs before undertaking any rendition as authorized by *Alvarez-Machain*. In addition, the Criminal Resource Manual also notes that "ruses" which lure an individual into a third country for the purposes of extradition may cause foreign relations problems and could be viewed as an infringement on a country's sovereignty.[14]

It should further be noted that according to the Department of State, Mexico denied extradition requests for major narcotics cases four times in 2004, and while that was fewer than in previous years, two of those extradition requests (from the Districts of Arizona and Colorado) were for "significant traffickers who have operated with impunity for years."[15] In fact, according to the Bureau of International Narcotics and Law Enforcement Affairs of the United States Department of State, as of March 2005, "no major Mexican drug trafficker has ever been extradited to the United States."[16]

It would appear that in light of these historical facts and statistics, the United States government manipulated international law in the instant case and is asserting that Mr. Torres-Garcia's abduction was permissible because he was "a man without an island" at the time of his detention.[17] According to the government theory, Mr. Torres-Garcia was without rights (with regard to extradition) because he was no longer on Mexican soil and had not yet been permitted legal entry into Panama. Mr. Torres-Garcia submits that such an argument must not stand, as it is hypocritical. Were another nation to use such an argument with regard to a U.S. national, the United States government would be outraged; yet it stands before this Court justifying its own actions with that argument in his case. It is clear that the government "deemed force more

---

[14] United States Attorneys' Criminal Resource Manual §§9-15.620 and 9-15.630.
[15] "International Narcotics Control Strategy Report"; United States Department of State; Bureau for International Narcotics and Law Enforcement Affairs; March 2005.
[16] *Id.*
[17] It must also be noted that by abducting Mr. Torres-Garcia, rather than extraditing him through conventional channels, the government may claim that it may circumvent the restrictions of the doctrine of specialty. Mr. Torres-Garcia would strongly disagree with any such position should it be taken by the government.

expeditious than legal process."[18]

In addition, the government contends in its pleadings that Mr. Torres-Garcia is a major Mexican drug trafficker. In light of that contention and the "International Narcotics Control Strategy Report" of March 2005, Mr. Torres-Garcia maintains that the United States government did not believe that Mexico would extradite him, if it so requested. As a result, Mr. Torres-Garcia submits, it waited for him to arrive in Panama to abduct him in order to infringe on his nation's sovereignty. As Justice Stevens noted in his *Alvarez-Machain* dissent, "Society is the ultimate loser when," in an attempt to convict those it believes guilty, "it uses methods that lead to decreased respect for the law."[19].

The U.S.-Panama treaty does not require that an individual be legally permitted entry into Panama in order for the provisions of the treaty to be activated. Article I of the treaty provides, in pertinent part:

> The Government of the United States and…the Republic of Panama mutually agree to deliver up persons…charged with…any of the crimes and offenses specified in the following article….
> ***found within the jurisdiction of the other…***Provided that this shall only be done upon such evidence of Criminality as, according to the laws of the place where the…person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.

U.S.-Panama treaty, Art. I (emphasis added). Even were this Court to disagree with Mr. Torres-Garcia regarding the dilution of the *Alvarez-Machain* holding in light of world events and its current historical context, Mr. Torres-Garcia maintains that the U.S.-Mexico treaty and the U.S.-Panama treaty are distinguishable.

As set forth above, and in contrast to the U.S.-Mexico treaty, the U.S.-Panama treaty

---

[18] *Alvarez-Machain* at 674 (Stevens, J., dissenting).
[19] *Alvarez-Machain* at 687, fn.37 (Stevens, J. dissenting) (quoting, *U.S. v. Toscanino*, 500 F.2d 267, 274 (2nd Cir. 1974).

provides the exclusive method for "delivery of a person" and states that it shall only be done in accordance with the specific language of the treaty. As set forth in Mr. Torres-Garcia's previous pleadings, Article IV of the U.S.-Panama treaty sets forth the procedure for "delivery" of a person:

> Where arrest and detention of a fugitive are desired…in advance of formal proofs, the proper course in the…Republic of Panama…shall be to apply to the Foreign Office, which will…cause steps to be taken…to secure the provisional arrest or ***detention*** of the fugitive.

U.S.-Panama treaty, Art IV (emphasis added).[20]

The Court has read Article IV to require certain procedures to be used *"if and when* the extradition process is invoked".[21] Mr. Torres-Garcia respectfully disagrees with that interpretation. As the 9th Circuit Court of Appeals recognized, the provisions of an extradition treaty "only make sense if they are understood as requiring each treaty signatory to comply with those procedures whenever it wishes to obtain jurisdiction over an individual who is located in another treaty nation. *U.S. v. Verdugo*-Urquidez, 939 F.2d 1341, 1351 (9th Cir. 1991). When read as a whole, the U.S.-Panama treaty requires that certain procedures be followed before a *person, found within the jurisdiction of Panama, shall be delivered* to the requesting country, i.e., the United States. The legal requirements of the U.S.-Panama treaty were applicable in Mr. Torres-Garcia's case. As a result, not only did Mr. Torres-Garcia's abduction from the territorial limits of Panama fail to comport with international standards of good faith, it also violated the terms of the U.S.-Panama treaty.

---

[20] Mr. Torres-Garcia shall also note for the record that the crimes charged in the D.C. indictment against him are not extraditable crimes in Article II of the U.S.-Panama treaty. Upon information and belief, however, Panama is a signatory to the 1998 United Nations Drug Convention.
[21] Memorandum Opinion at 7.

8

### B. Extraordinary Conduct

Mr. Torres-Garcia maintains that the government's tactics in luring him to Panama and subsequently abducting him were extraordinarily heavy-handed, in contravention of international law and require dismissal of the case against him for lack of jurisdiction. He, therefore, respectfully requests that the Court reconsider its position regarding that issue as well.

Mr. Torres-Garcia, therefore, respectfully requests that the Court reconsider its decision, and grant his Motion to Dismiss for Lack of Jurisdiction.

### II. Venue

In its Memorandum Opinion, the Court concluded that it did not have to decide whether venue was proper in Mr. Torres-Garcia's case pursuant to §959(c) because the government's case for venue was "far better under 18 U.S.C. §3238."[22] Mr. Torres-Garcia respectfully maintains that venue does not properly lie in this district pursuant to either §959(c) or §3238. As the Court has limited its decision to §3238, however, Mr. Torres-Garcia shall not reiterate his arguments regarding the inapplicability of §959(c).

As noted above, Mr. Torres-Garcia has been charged in Count 2 of the indictment with violation of several provisions of §1956, including substantive violations. §1956 very clearly has its own special venue provision, much like §959. Unlike §959, however, that special venue provision specifically applies to both *substantive* offenses under §1956 and *conspiracy* to violate §1956. The Court's opinion regarding venue appears to apply only to Count 1 of the indictment and did not address the specific venue provision of §1956. Mr. Torres-Garcia, therefore, shall synopsize his arguments regarding the special venue provision of §1956 in this motion for reconsideration.

---

[22] Memorandum Opinion at 10.

9

As set forth in his previous pleadings, Mr. Torres-Garcia submits that even assuming all facts as alleged by the government, venue to prosecute any case against him does not properly lie in the District of Columbia, but rather that any such case must proceed in the district(s) in which criminal conduct allegedly took place, that is, the Northern District of Illinois and/or the Southern District of Texas. Mr. Torres-Garcia further asserts that it is clear that the government has gone "forum-shopping" in his case.

The Supreme Court has recognized the appearance of abuse, if not actual abuse, in the selection of what may be deemed a tribunal favorable to the prosecution, and that such appearance of abuse could undermine the constitutional safeguards regarding venue. *United States v. Johnson,* 323 U.S. 273 (1944). The Court, therefore, adopted a restrictive construction of venue provisions. *Id.* "Venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of a 'tribunal favorable' to it." *United States v. Cores,* 356 U.S. 405, 407 (1958).

### A. Count One

#### i. §3238

"Congress enacted 18 U.S.C. §3238 …to specify the applicable venue when a crime is *committed outside* the United States." *United States v. Yousef,* 327 F.3d 56, 114 (2nd Cir. 2003) (emphasis added). *See also, United States v. Cobar,* 2006 WL 3289267 at p. 5 (D.D.C. 2006) (Slip Copy) (§3238 "governs crimes *committed outside* of any district in the United States) (emphasis added). §3238 provides, in pertinent part:

> The trial of all offenses begun or committed ….out of the jurisdiction of any particular State or district, shall be in the district in which the offender…is arrested or first brought; but if such offender or offenders are not so arrested or brought into any district, an *indictment*…may be filed in the district of the last

>    known residence of…any one of two of more joint offenders, or if
>    no such residence is known…in the District of Colombia.

18 U.S.C. §3238 (emphasis added).

If an offense is partially committed in a district in the United States, however, §3238 does not apply.  *United States v. Pace*, 314 F.3d 344 (9th Cir. 2002); *United States v. Goldberg,* 830 F.2d 459, 465 (3rd Cir. 1987).

As Judge Lamberth stated in *United States v. Cobar, et al.*, "in enacting the drug conspiracy statutes, Congress returned to the common law understanding of conspiracy..." 2006 WL 3289267, pg 2 (D.D.C. November 9, 2006) (05-451 (RCL)) (internal citations omitted).  "At common law, the crime of conspiracy was indictable upon the formation of the agreement, and no overt act in furtherance of the conspiracy was required." *Id*.  See also *Hyde v. United States*, 225 U.S. 347, 359 (1912).

In *Hyde v. United States*, the Supreme Court stated, "At common law the venue in conspiracy could be laid in any county in which it could be proven that an overt act was done by any one of the conspirators in furtherance of their common design. *Where a conspiracy was formed at sea, and an overt act done in Middlesex county, it was held that the venue was properly laid in that county.*"  Supra, 365 (1912) (quoting *Robinson v. United States*, 172 F. 105 (8th Cir. 1909) (internal citations and quotations omitted) (emphasis added).  A defendant has "a constitutional right to be tried in the State and district where his alleged crime was 'committed'…" *United States v. Rodriguez-Moreno*, 526 U.S. 275, 285 (1999) (Scalia, J. dissenting).  "…Conspiracy resembles treason in England,…The crime consists in imagining the death of the King.  In contemplation of law, the crime is committed wherever the traitor is and furnishes proof of his wicked intention by the exhibition of any overt act". *Hyde*, *supra* at 365-66.

Mr. Torres-Garcia respectfully disagrees with the Court's interpretation of §3238 and maintains that venue for the indictment does not properly lie in this District pursuant to §3238 because that provision only applies to "offenses not committed in any district." As set forth in great detail in Mr. Torres-Garcia's previous pleadings, the government has alleged that co-conspirators of Mr. Torres-Garcia conducted numerous overt acts (at Mr. Torres-Garcia's direction via telephone, etc.) in furtherance of the alleged conspiracy in the States of Texas and Illinois. Mr. Torres-Garcia maintains that as a result, venue only properly lies in the Southern District of Texas or the Northern District of Illinois.

Mr. Torres-Garcia submits that the fact that Congress has recently returned to a common law definition of conspiracy when enacting drug conspiracy statutes supports his position, in light of the Supreme Court's opinion in *Hyde*. Under that definition, the government is not required to prove an overt act to prove the crime of conspiracy. If any alleged co-conspirator commits an overt act in furtherance of an alleged conspiracy, however, venue lies in the jurisdiction in which such act was committed. As the Supreme Court has stated, under common law, venue properly lies in any district in which a co-conspirator commits an act in furtherance of the alleged conspiracy. *See Hyde, supra*.

Mr. Torres-Garcia, therefore, respectfully requests that the Court reconsider its decision and grant Mr. Torres-Garcia's Motion to Dismiss for Lack of Venue.

### ii. §3237(a)

In the alternative, Mr. Torres-Garcia maintains that given the facts alleged by the government, venue does not properly lie in this district because the violations of §§960 and 963, as well as 18 U.S.C. §2, with which he is charged would constitute a "continuing offense," which would trigger a specific venue statute.

As the 9th Circuit Court of Appeals recently stated:

> Crimes consisting of a single noncontinuing act are "committed" in the district where the act is performed. *Crimes that are not unitary but instead span space and time, however, may be considered continuing offenses under 18 U.S.C. §3237(a). Continuing offenses may be prosecuted in any district in which such offense was begun, continued, or completed.*

*United States v. Pace*, 314 F.3d 344, 350 (9th Cir. 2002) (internal quotations and citations omitted) (emphasis added).

Congress has enacted a specific venue provision that applies to "continuing offenses", 18 U.S.C. §3237 (hereinafter referred to as "§3237"). §3237 provides, in pertinent part:

> 3237. Offenses begun in one district and completed in another
>
> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense *involving* the use of the mails, *transportation in interstate or foreign commerce, or the importation of an object or person in the United States is a continuing offense* and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. §3237(a) (emphasis added).

Assuming the facts alleged by the government, it would be impossible to find that the crimes with which Mr. Torres-Garcia is charged could be characterized as a "single noncontinuing act".[23] The facts alleged by the government can only lead to one characterization: the crimes with which Mr. Torres-Garcia is charged are "continuing offenses".

---

[23] As Mr. Torres-Garcia has set forth the government's factual allegations in great detail in his previous pleadings, he shall not do so at this time.

13

According to the government, not only did Mr. Torres-Garcia conspire to commit the drug offenses with which he is charged, he and his co-conspirators actually did distribute/import drugs within, and into, the United States. §3237(a) requires that any continuing offense that "involves" the importation of an object into the United States be prosecuted in any district "from, through, or into which such….imported object…moves." Under the facts alleged by the government, therefore, venue in Mr. Torres-Garcia's case properly lies only in the Southern District of Texas or the Northern District of Illinois.

Mr. Torres-Garcia, therefore, respectfully requests that the Court reconsider its decision, and grant his Motion to Dismiss for Lack of Venue.

**B.     Count 2**

As set forth above, Mr. Torres-Garcia is charged in Count 2 of the indictment with violation of several provisions of §1956 and 18 U.S.C. §2. In his Supplemental Memorandum, Mr. Torres-Garcia brought to the Court's attention that among the violations with which he is charged, Mr. Torres-Garcia is charged with substantive violations of §1956. Count 2 of the indictment filed against Mr. Torres-Garcia charges that he committed acts, "All in violation of Title 18, United States Code, Sections 1956(h), *1956(a)(2) and 1956(a)(3)* and Title 18, United States Code, Section 2."[24]

§1956 provides, in pertinent part:

> (a)(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United State to or through a place outside the United States or to a place in the United States from or through a place outside the United States—
>   (A) with the intent to promote the carrying on of specified unlawful activity; or
>   (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer

---
[24] D.C. Indictment, Count 2, pg 3 (emphasis added).

>represent the proceeds of some form of unlawful activity and knowing that such…is designed in whole or in part—
>(i)to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
>(ii)to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is greater, or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.

(a)(3) Whoever, with the intent—
>(A) to promote the carrying on of specified unlawful activity;
>(B) (to conceal or disguise the nature, location, source, ownership or control of property believed to be the proceeds of specified unlawful activity, or
>(C) to avoid a transaction reporting requirement under State of Federal law,

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval

\* \* \* \* \*

(h) Any person who conspires to commit any offense defined in this section….shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

(i) Venue.—(1) Except as provided in paragraph (2), a prosecution for an offense under this section…may be brought in--

15

>    (A) any district in which the financial or monetary transaction is conducted; or
>    (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.
>
>    (2) A prosecution for…conspiracy offense under this section…may be brought in the district where venue would lie for the completed offense under paragraph (1), or in any other district where an act in furtherance of the attempt or conspiracy took place.
>
>    (3) For purposes of this section, a transfer of funds from 1 place to another, by wire or any other means, shall constitute a single, continuing transaction. Any person who conducts…any portion of the transaction may be charged in any district in which the transaction takes place.

Clearly, pursuant to §1956, the indictment must be dismissed as venue does not properly lie in the District of Columbia for Count 2. §1956(i) very clearly states that venue for a substantive violation of §1956, as it would apply in this case, lies in any district in which the financial transaction is conducted. In addition, it sets forth that venue for a conspiracy to violate §1956 lies in the district where venue would lie for the completed offense, or in a district where an act in furtherance of the conspiracy took place. Both the affidavit of the Northern District of Illinois case, as well as the "proffer" made by the government at the January 3, 2007 hearing, make it clear that the alleged money laundering occurred in Chicago. As a result, the only proper venue for the money laundering charges against Mr. Torres-Garcia is the Northern District of Illinois.

Mr. Torres-Garcia, therefore, respectfully requests that the Court reconsider its decision and grant his Motion to Dismiss for Lack of Venue.

### C. Substantive Offenses and Conspiracy

"Where…a defendant is charged with conspiracy as well as substantive offenses, venue must be laid in a district where all the counts may be tried. Thus, the venue potential in a conspiracy case for the prosecutor to choose from is narrowed by the substantive counts the government wishes to prosecute." *United States v. Saavedra,* 223 F. 3d 85, 89 (2nd Cir. 2000). *See also,* Norman Abrams, *Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula,* 9 UCLA L.Rev. 751, 774 (1962).

The indictment filed against Mr. Torres-Garcia charges him with both substantive offenses and conspiracy. As a result, proper venue lies only where all of those counts may be tried. The charges set forth in Count 2 of the indictment may only be properly prosecuted in the Northern District of Illinois. The charges set forth in Count 1 of the indictment could also be properly prosecuted in that same district. As a result, the only proper venue for all of the counts alleged against Mr. Torres-Garcia is the Northern District of Illinois, not the District of Columbia.

Mr. Torres-Garcia, therefore, respectfully requests that the Court reconsider its decision and grant his Motion to Dismiss for Lack of Venue.

### D. Forum Shopping

In the alternative, and as set forth above and in previous pleadings, Mr. Torres-Garcia maintains that the government has brought this action against him, rather than in the Southern District of Texas or the Northern District of Illinois, in order to avail itself of a forum that it believes would be more favorable to it.[25]

---

[25] Mr. Torres-Garcia further submits that this action has been brought against him in this district as a result of "Political Interoffice Laundry" as set forth in his Supplemental Memorandum.

17

This is not a case of two different plaintiffs (i.e. states, cities, etc.) pursuing charges against Mr. Torres-Garcia. A single plaintiff, the United States government, has filed indictments against Mr. Torres-Garcia in two different districts. Each of the indictments against Mr. Torres-Garcia are based upon the exact same set of facts and, upon information and belief, would require the exact same witnesses. There is not a single, legal reason for pursuing the case against Mr. Torres-Garcia in two, separate venues. Such forum-shopping raises the same concerns about abuse in the selection of a favorable tribunal as the Supreme Court has held could undermine constitutional safeguards regarding venue. *Johnson, supra.*

In addition, to allow a single plaintiff, albeit the United States government, to "divide and conquer", using separate forums, is fundamentally unfair. That single plaintiff must be required to pursue its case in a single venue. As set forth above, the appropriate venue for the charges levied against Mr. Torres-Garcia is not the District of Columbia, but rather is the Northern District of Illinois.

**WHEREFORE,** Mr. Torres-Garcia respectfully requests that this Court reconsider its decision and grant his Motion to Dismiss the Indictment for Lack of Jurisdiction and his Motion to Dismiss the Indictment for Lack of Venue.

Respectfully submitted,

**RETURETA & WASSEM, P.L.L.C.**

By: _____/s/_____
Manuel J. Retureta, Esq.
District of Columbia Bar #430006
601 Pennsylvania Avenue, NW
South Building – Suite 900
Washington, D.C. 20004
(202) 220-3073
(202) 220-3130 Fax

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing pleading was served on all parties via ECF on this 3rd day of May 2007.

                                                                                        /s/
                                                      Manuel J. Retureta, Esq.