**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Criminal No.: 05-267 (RMC)** |
| | : | |
| FRANCISCO TORRES-GARCIA | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
ELECTRONIC SURVEILLANCE EVIDENCE AND ALL PHYSICAL EVIDENCE
DERIVED FROM SUCH EVIDENCE**

**COMES NOW** the United States of America, by and through the undersigned attorney, and hereby responds to the defendant Torres-Garcia's motion to suppress electronic surveillance evidence and all physical evidence derived therefrom.

## INTRODUCTION

The defendant requests "suppression of all electronic surveillance/wiretap evidence expected to be introduced at trial," as well as all evidence derived therefrom. Furthermore, the defendant requests a hearing on his motion.

## FACTS

The government stipulates to the "Concise Procedural Background" set forth by the defendant and acknowledges that the defendant is an aggrieved party with standing to file this motion. The government does seek to introduce electronic surveillance obtained from the wiretaps authorized by the U.S. District Court Judges listed in defendant's motion who authorized each wiretap or extension. The government notes that not all intercepted calls it seeks to present as evidence are calls whereby the defendant is a speaker and his standing is therefore limited to

1

those calls in which law enforcement intercepted his voice.[1]  For reasons stated below, the

government objects to an evidentiary hearing.

## <u>ARGUMENT</u>

In June 2006, in <u>United States v. Carter</u>, our own Court of Appeals summarized the

requirements of the federal wiretap statute:

> Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.§
> 2510, <u>et seq.</u>, authorizes the district court to approve an application for the
> interception of certain wire, oral, or electronic communications. 18 U.S.C. § 2518.
> The wiretap statute requires that an application for a wiretap shall be in writing,
> under oath, and shall contain certain information including "a full and complete
> statement of the facts and circumstances relied upon by the applicant[ ] to justify
> his belief that an order should be issued." <u>Id.</u> § 2518(1).  On the basis of the facts
> submitted by the applicant, the district court may authorize a wiretap upon finding
> that (1) probable cause exists to believe that an individual has committed or is
> about to commit one of certain enumerated offenses; (2) probable cause exists to
> believe that "particular communications concerning that offense will be obtained"
> through an interception; (3) "normal investigative procedures have been tried and
> have failed or reasonably appear to be unlikely to succeed if tried"; and (4)
> probable cause exists to believe that the communication facility sought to be
> wiretapped "[is] being used, or [is] about to be used, in connection with the
> commission of [the] offense." <u>Id.</u> § 2518(3)(a-d); <u>see</u> <u>United States v. Donovan</u>,
> 429 U.S. 413, 435 (1977). The determination that "normal investigative
> procedures have been tried and have failed or reasonably appear to be unlikely to
> succeed if tried or to be too dangerous," 18 U.S.C. § 2518(3)©, is referred to as
> the **"necessity requirement,"** and it is the "keystone of congressional regulation
> of electronic eavesdropping." <u>United States v. Williams</u>, 580 F.2d 578, 587-588
> (D.C. Cir.1978).

> The wiretapping statute also requires that "[e]very [wiretap] order and extension
> thereof shall contain a provision that the authorization to intercept shall be
> executed as soon as practicable [and] shall be conducted in such a way as to
> minimize the interception of communications not otherwise subject to interception
> . . .." 18 U.S.C. § 2518(5). This is referred to as the **"minimization
> requirement**." Although "[t]he statute does not forbid the interception of all

---

[1]  The only facilities that law enforcement sought to intercept in these applications were
mobile phones.

nonrelevant conversations," the government must make reasonable efforts to "minimize" the interception of such conversations. <u>Scott v. United States</u>, 436 U.S. 128, 139-40 (1978). The statute also provides that an order authorizing an interception cannot extend "for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days." 18 U.S.C. § 2518(5).

449 F.3d 1287, 1291-92 (emphasis added).

The Supreme Court has held that in order for a defendant to have standing to seek suppression of electronic surveillance evidence, the surveillance must be "violative of his own Fourth Amendment right to be free of unreasonable searches and seizures". <u>Alderman v. United States</u>, 394 U.S. 165, 176 (1969) ("Such violation would occur if the United States unlawfully overheard conversations of a [defendant] himself or conversations occurring on his premises, whether or not he was present or participated in those conversations") <u>Id.</u> <u>See</u> <u>also</u> <u>United States v. Scott</u>, 504 F.2d 194, 197 (D.C. Cir. 1978) <u>aff'd</u>, 436 U.S. 128. ("The prohibition against assertion of another's rights normally would preclude an aggrieved person from suppressing a conversation in which he did not participate."); <u>United States v. Poeta</u>, 455 F.2d 117, 122 (2d Cir.), <u>cert. denied</u>, 406 U.S. 948 (1972). In a joint trial, the distinction with respect to standing has no practical significance: if a Court suppresses individual instances of electronic surveillance, such as a conversation, that evidence is inadmissible at trial even though some defendants may have had no standing to challenge the particular conversation. As in this case, a trial of an individual defendant, a Court's order suppressing a particular interception would not require suppression of the same conversation in the trial of a co-defendant who lacked standing to move for suppression.

## I.    The Necessity Requirement was Easily Met in this Case

The Defendant alleges that the interception Orders issued by the District Court Judges reviewing the various wiretap applications were defective because the government failed to fully exhaust all investigative techniques before resorting to the use of wiretaps. The Court should reject this claim and deny the Motion to Suppress based on these grounds.

### A.    The Legal Standard.

Title 18 U.S.C. §2518(1)(a) provides that each application for an order authorizing electronic surveillance must contain:

> A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

Similarly, prior to granting an order authorizing a wiretap, an issuing judge must find, among other things, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §2518(3)©. These prerequisites to a wiretap are commonly known as the "exhaustion" requirement.

The purpose of the statutory exhaustion requirement is to ensure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime," and to inform the issuing judge of the difficulties inherent in the use of traditional techniques. United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). "[T]he burden that these provisions impose upon the government to show the inadequacy of normal investigative techniques is not great, and the adequacy of such a showing is to be tested in a practical and common sense fashion." United States v. Anderson, 542 F.2d  428, 431 (7th Cir. 1976); accord,

United States v. Armocida, 515 F.2d 29, 38 (3rd Cir.), cert. denied, 423 U.S. 858 (1975); United

States v. Webster, 473 F. Supp. 586, 595 (D.Md. 1979) (statutory burden on the government is

not great in showing compliance with exhaustion requirement), aff'd, 639 F.2d 174 (4th Cir.),

cert. denied, 454 U.S. 857 (1981), modified on other grounds, 669 F.2d 185 (4th Cir. 1982), cert.

denied, 456 U.S. 935 (1991); United States v. Askins, 351 F. Supp. 408, 414 (D.Md.

1972)(government's burden of establishing exhaustion is not great).

Moreover, 18 U.S.C. § 2518© does not require the literal exhaustion of all normal

investigative techniques. United States v. Clerkley, 556 F.2d 709, 715 (4th Cir. 1977) ("police

need not exhaust every conceivable technique before making application for a wiretap"), cert.

denied, 436 U.S. 930 (1978). The statute requires only "'that the agents inform the authorizing

judicial officer of the difficulties inherent in the use of normal law enforcement methods.'" United

States v. Torres, 901 F.2d 205, 231 (2d Cir.) (citations omitted), cert. denied, 498 U.S. 906

(1990); United States v. Sobamowa, 892 F.2d 90, 93 (D.C. Cir. 1989) (the government is not

required to enumerate in its affidavit every technique or opportunity missed or overlooked), cert.

denied, 498 U.S. 825 (1990). Rather, the government need show only that other techniques

would be impracticable. United States v. Johnson, 696 F.2d 115, 123 (D.C. Cir. 1982); see also,

United States v. Torres, 908 F.2d 1417, 1422 (9th Cir.) (although generally a wire intercept

should not constitute the first step in an investigation, the government need not exhaust every

conceivable investigative technique in order to show necessity), cert. denied, 498 U.S. 905

(1990); United States v. Garcia, 785 F.2d 214, 223 (8th Cir.) ("affidavit need not explain away all

possible alternate techniques because investigators are not required to use wiretaps or

eavesdropping devices only as a last resort"), cert. denied, 475 U.S. 1143 (1986). A "standard of

reasonableness should be employed in measuring the affidavit against the statutory requirements."
United States v. Oriakhi, 57 F.3d 1290, 1298 (4th Cir.) (showing of necessity is "'to be tested in a
practical and commonsense fashion,' . . . that does not 'hamper unduly the investigative power of
law enforcement agents'" (citations omitted)), cert. denied, 516 U.S. 952 (1995); United States v.
Spagnuolo, 549 F.2d 705, 710 (9th Cir. 1977).

    Our Court of Appeals in Carter specifically addressed the necessity requirement as
follows:

> Congress created the necessity requirement to ensure that "wiretapping is not
> resorted to in situations where traditional investigative techniques would suffice to
> expose the crime." (Quoting Kahn, 415 U.S. at 153 n. 12 (1974)).
>
> Because, however, the "statutory command was not designed to foreclose
> electronic surveillance until every other imaginable method of investigation has
> been unsuccessfully attempted," the government will meet its burden of
> demonstrating necessity if it shows that "other techniques are impractical under the
> circumstances and that it would be unreasonable to require pursuit of those
> avenues of investigation." (Quoting Williams, 580 F.2d at 588 (Internal quotation
> marks omitted)).

449 F.3d at 1293. The Court has also said that even though merely conclusory statements about
necessity will not suffice, even conclusory statements "cannot rationally be separated from . . .
preceding detailed descriptions of . . . investigative events." Sobamowow, 892 F.2d at 93; United
States v. Eiland, 398 F.Supp.2d 160, 168 (D.D.C. 2005) (Lamberth, J.) ("the use of conclusory
language does not necessarily render the applications inadequate. The determination of probable
cause is by nature a conclusory process. What agents must provide are facts on which their
conclusions or inferences are based and some basis for the credibility of those facts. Upon that
showing, the issuing judge may make a finding of probable cause notwithstanding the use of
conclusory language.").

B.    **Defendant's Argument**

The defendant argues that the government failed the necessity requirement in its application for the initial Illinois wiretap for the following reasons:

(1) the initial affidavit in support of interception in the Northern District of Illinois failed to demonstrate that traditional investigative techniques were not working, and that the investigation was quite successful without the use of unnecessary wiretaps; (Motion at 6-7)

(2) the request "was absent of any showing that any investigative techniques were tried or proven unsuccessful prior to resorting to the extreme measure of electronic surveillance"; (Motion at 4)

(3) other investigative techniques – i.e., "surveillance"; "undercover agents"; "informants" were "clearly working" well enough and alleviated the need for a wiretap on the target phones.; (Motion at 7)

(4) the applications for extensions of wiretap interceptions failed to support the necessity of continued interception; (Motion at 7).

The defendant extends his argument to the subsequent applications for extension of the initial order in the Northern District of Illinois, as well as all the wiretaps in the Southern District of Texas, but does not cite any specific defect with those requests, and as discussed below, the Court should summarily deny the Motion to Suppress based on those arguments.

C.    **Government's Response**

Measured by the applicable legal principles described above, the wiretap authorization orders issued by the various District Court Judges in this case were amply supported by the government's showing of "necessity."  The government was fulsome in its applications in

explaining all the investigative techniques it had undertaken before it applied for the initial wiretap authorization of Mendez-Garcia's telephone (the Chicago wiretap). It also provided ample justification for the extensions and for the subsequent wiretaps in Houston by agents investigating those targets. The Attorney General's representatives and three United States District Court Judges recognized that the government's need for the wiretaps were fully supported by the circumstances.

The affidavit[2] submitted by the agent in support of authorization for wire interceptions on Mendez-Garcia's initial wiretap included the following purposes of the requested authority to intercept: the determination of the nature, extent, methods and records of the money laundering operation; the full identities and roles of co-conspirators; the existence and location of resources and dispositions of illegal proceeds; the identification of locations and items that further the conspiracy; and evidence to prove the guilt of participants in the illegal conspiracy. (April 20, 2005 Affidavit pp. 3-4, hereinafter "4/20/05 Aff. at").

In each affidavit in support of applications for authorization to conduct electronic surveillance, agents swore that their methods could only take their investigation to the periphery of the known actors and methods, and was likely not to reveal much more than what was already known. Agents did not have an informant who had access to the Chicago or Houston cell. The limited contact that the sole confidential source (CS1) was able to have with Torres was only through agent monitored phone contact. Furthermore, CS1's incarceration limited IT's access to

---

[2] The government understands that the defendant filed all the supporting applications, affidavits and orders relevant to this motion in a separate attachment. The government will have available the same documents, but will not duplicate the filing the same attachments with this filing unless the Court directs the government to do so.

freely initiate and accept phone communications with any target, including Torres.

The government must make a "good faith effort" to use traditional investigative means before resorting to the use of a wiretap.  United States v. London, 66 F.3d 1227 (1st Cir. 1995). The government is simply required to illustrate to the issuing Judge that attempts have been made or would fail if tried.  The police need not exhaust every conceivable technique before making an application for a wiretap.  United States v. Bankston, 182 F.3d 296 (5th Cir. 1999); United States v. Barnes, 47 F.3d 963 (8th Cir. 1995); United States v. Clerkley, 556 F.2d 709 (4th Cir. 1977).

As set forth in the affidavit, several less intrusive investigative techniques had been used or contemplated and found insufficient to accomplish the goals of the investigation.  For instance, agents  noted that targets employed counter-surveillance methods which rendered physical surveillance difficult and dangerous.  (5/19/05 Aff. at 36-37). Other techniques used included the use of a cooperating individual, undercover police officers, recorded consensual phone calls, and the analysis of pen register and trap and trace devices.  Other methods considered but deemed unlikely to succeed included search warrants, the use of the grand jury, and witness interviews. (4/20/05 Aff. at 26-32).  Drug Enforcement Administration (DEA) Special Agent Wilfred Taylor explained with respect to each of these investigative techniques, the results of using the technique, and/or why it was not used.  (4/13/04 Aff. at 24-32).

The defendant argues that certain traditional methods of investigation were successfully working, such as the CS1 recorded phone calls, or the DEA-Bilateral Case Group undercover agent's (BCG U/C) ability to meet and call Torres demonstrate a lack of necessity to wiretap the Mendez-Garcia phone.  Such an argument is simply misplaced.  The reasons for applying for wiretap orders were specifically spelled out in each of the affidavits.  This investigation involved

an international narcotics trafficking and money laundering organization, not just Defendant

Torres.  See United States v. O'Neal, 2000 WL 328110 (9th Cir. 3/24/00) (unpublished)

(defendant's argument that there was no need for wiretaps because the Government had already

developed abundant evidence against him through alternative investigative techniques fails

because wiretaps targeted the entire conspiracy, not just this defendant.).  Furthermore, several

violators were discovered through the interception of phones which defeat the idea that there

were other, more traditional ways to identify and obtain evidence against the targets.

Finally, the defendant loses sight of the fact that an affidavit (and its accompanying

application) to intercept communications is basically a search warrant.  There are certain

procedural safeguards which the government must meet to achieve permission to actually execute

this special type of warrant, but it is in essence a search warrant and should be reviewed as such.

United States v. Bennett, 219 F.3d 1117 (9th Cir. 2000) ("We review for abuse of discretion an

issuing judge's decision that a wiretap was necessary.").  The defendant acknowledges that "the

government is 'not required to enumerate every technique or opportunity missed or overlooked,'

and only needs to show that other techniques would be 'impracticable under the circumstances'."

Sobamowow, 892 F.2d at 93, and United States v. Johnson, 696 F.2d 115, 123 (1982); (Motion

at 5).

In an effort apparently to preserve error, defendant makes conclusory allegations that the

necessity requirement was not met in each extension application or application for interception of

a new facility.  These accusations are wholly inadequate to require the Court to address it or even

to grant a hearing on it.  Fed. R. Crim. P. 47 mandates that a motion to the Court "shall state the

grounds upon which it is made and shall set forth the relief or order sought."  In addition, local

district court rules require that "[e]ach motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of the facts."  LCrR 47(a).

Since Defendant has not set forth the specifics of any alleged illegality of the subsequent Title III applications, extensions, and subsequent interceptions, he is not entitled to a hearing on the issue.  See, e.g., United States v. Thornton, 454 F.2d 957, 967 n.65 (D.C. Cir. 1971) ("An evidentiary exploration is not required as a matter of course, but only upon factual allegations which, if established, would warrant relief.); accord United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994); United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983); United States v. Migely, 596 F.2d 511 513 (1st Cir.), cert. denied, 442 U.S. 943 (1979); United States v. Poe, 462 F.2d 195, 197 (5th Cir. 1972), cert. denied, 414 U.S. 845 (1973); United States v. Cranson, 453 F.2d 123, 126 (4th Cir. 1971), cert. denied, 406 U.S. 909 (1972); Cohen v. United States, 378 F.2d 751, 760 (9th Cir.), cert. denied, 389 U.S. 897 (1967); Grant v. United States, 282 F.2d 165, 170 (2d Cir. 1960).

An evidentiary hearing is generally required "if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue."  United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986);  see also United States v. Batiste, 868 F.2d 1089, 1091-92 (9th Cir.1989).  The decision of whether to hold an evidentiary hearing is within the discretion of the district court.  Walczak, 783 F.2d at 857.  Parties must make a sufficient showing of what issues of fact would be resolved by an evidentiary hearing, and what evidence, in addition to that presented by the affidavits, would be adduced by such a hearing.  See Walczak, 783 F.2d at 857;  United States v.

11

Marcello, 731 F.2d 1354, 1358 (9th Cir.1984); United States v. Ledesma, 499 F.2d 36, 39 (9th

Cir.), cert. denied, 419 U.S. 1024 (1974); Cohen v. United States, 378 F.2d 751, 760 (9th Cir.),

cert. denied, 389 U.S. 897 (1967); see also 3 C. Wright, Federal Practice and Procedure § 675, at

781-82 (1982) ("Factual allegations that are general or conclusory or based upon suspicion and

conjecture will not suffice.").  Simply arguing that necessity was lacking and attaching all seven

affidavits with their accompanying applications and orders does not make a sufficient showing to

require the Court to have a hearing on the issue.  An examination of the affidavits reveal that the

necessity requirement was met in every application.

 The subsequent affidavits in support of the new or extended authorizations to wiretap do

contain similar, though not identical, sections.  The necessity sections of the extension affidavits

submitted on May 19, 2005, June 17, 2005, and July 28, 2005 contain added factual information.

The defendant's motion claims that those affidavits also fail to support a necessity to continue

authorization to wiretap.  A careful analysis of all the affidavits demonstrate that this is simply not

true.  Factual similarity should be expected in extension affidavits or affidavits supporting the

application to intercept a different phone relevant to the overall investigation.

 In this case, there were several common targets, including the defendant, one of the

leaders of this global criminal enterprise.  Certain facts were added as necessary to update the

issuing Judges of new developments, and certain facts were repeated when law enforcement

sought new applications for interception of additional facilities discovered as part of the same

larger investigation.  It should be noted that the affiants did not choose to incorporate previous

affidavits by reference.  Therefore, each affidavit stood on its own to establish all pertinent facts

required for each application or extension.  "Although an extension affidavit must demonstrate the

necessity of ongoing surveillance, it need not set forth different information from that which is presented in the original application. Duplication may be unavoidable, in fact, where the basis for the necessity remains unchanged over the course of an authorization period." United States v. Parks, 1997 WL 136761 (N.D. Ill.) (unreported). The fact remains that the sections dealing with the likely failures and shortcomings of traditional law enforcement techniques in applications subsequent to the first 4/20/05 Affidavit were updated. Also, a review of these sections demonstrates that law enforcement did not abandon those traditional techniques of investigation. Despite continued use of some of those techniques, Agent Taylor continued to advise the court that the stated goals of the wiretap investigation had not been met, including discovering the full scope of the domestic cells and their international money laundering techniques. Furthermore, agents informed the Judges that traditional law enforcement techniques against such a sophisticated international criminal organization would not likely yield the results needed to completely and fully investigate the participants, methods, amounts and transportation details of the violators' activities.

Based on the reasons discussed above, the three United States District Judges clearly found that the United States had fulfilled its burden demonstrating the necessity for the electronic surveillance. Accordingly, the defendant has failed to cite any viable defect that would warrant *de novo* review of those decisions by this Court.

## II.    Probable Cause

### A.    Defendant's Argument

Without citing a single example, the defendant claims that all wiretap affidavits for each application and extension lacked probable cause. The defendant further complains that the

agents' affidavits were "conclusory, and at times omit and mislead." (Motion at 8).

**B.    Government's Response**

Again, the defendant argues that the subsequent affidavits and extension affidavits lacked probably cause.  These assertions are without any specific factual example that demonstrate the District Court Judges lacked a factual basis to find the existence of the requisite probable cause required under the statute.  Therefore, the Court should deny defendant's Motion to Suppress based on his arguments that the affidavits lacked probable cause.  The defendant has possessed copies of each affidavit for almost two years, and his present attorney has had copies of these documents for more than a year.  The government also consented to the defendant's late-filing of the wiretap suppression motion.  It is improper to wait until the date of a hearing or until an opportunity to supply additional pleadings to then provide a factual basis to support an argument that the affidavits lacked probable cause.  The opportunity to file such motions lapsed and the defendant's lack of specific examples demonstrates his claim is meritless.

Torres apparently argues that probable cause was lacking with regard to him, but we do not know which affidavit he believes is deficient.  Additionally, he complains of the same information used in multiple applications for subsequent affidavits for authority to intercept communications, a practice he calls "cutting and pasting" or "piggy-backing".  We can only surmise that Torres complains about extension applications listing him or his alias.  As discussed below, these arguments are without merit.  Each affidavit in support of a wiretap application was replete with probable cause and could not be challenged in good faith in the opinion of the government.  An examination of the first affidavit clearly demonstrates the existence of probable cause. (4/20/05 Aff. at 11-13).

14

In that affidavit, Drug Enforcement Administration ("DEA") Special Agent Wilfred Taylor explains that he sought the application for wiretap surveillance to investigate crimes involving money laundering and drug trafficking offenses. (4/20/05 Aff. at 3). Agent Taylor recounted on-going and previous money laundering and drug trafficking investigations of all targeted interceptees, including the prior wiretaps of the defendant Torres and also the concurrent Houston narcotics investigation of Torres. (4/20/05 Aff. at 6-9). The agent also reported that the investigators initiated an undercover operation whereby they could investigate Torres and his drug trafficking and money laundering operation as well as his associates in the Chicago, Illinois area. (4/20/05 Aff. at 11-13). The agent describes how the undercover agent was introduced to Torres through a confidential source (CS1), and how Torres called the DEA Bilateral Case Group undercover agent (BCG U/C) to inform him that targeted interceptee Javier Mendez-Garcia wanted to contact the undercover agent's Chicago contact (the Chicago U/C) to discuss their proposal for the BCG U/C to ship multi-ton cocaine loads into the United States and to launder drug profits. (4/20/05 Aff. at 13). The BCG U/C then provided Torres with phone numbers for the Chicago U/C.

Later that day on March 22, 2005, the Chicago U/C received a phone call and spoke to Mendez-Garcia to set up a time when he had the money to launder. On March 24, 2005, the Chicago U/C received another phone call from Mendez-Garcia using the targeted telephone (312-404-0734) to arrange a meeting. The two spoke two additional times to set up a meeting to discuss the money laundering transaction. (4/20/05 Aff. at 14-15). The U/C and Mendez-Garcia later met and agreed to launder $100,000.00 of illegal narcotics profits. (4/20/05 Aff. at 14-17). During this meeting, Mendez-Garcia informed the Chicago U/C in coded language that he only

used the targeted telephone for his money laundering business.  (4/20/05 Aff. at 17).
Furthermore, the U/C informed Mendez-Garcia that he had a vehicle retrofitted with a trap to
conceal money.  Mendez-Garcia wanted to know if the U/C had a person who could construct a
trap for him which would be large enough to secretly transport 25 kilograms of cocaine.  (4/20/05
Aff. at 16).

The agent certainly supplied the issuing District Court Judge with more than enough facts
to support the findings that there was probable cause that the targeted telephone was used to
facilitate the investigated crimes.

Furthermore, Courts must examine each affidavit (in support of a wiretap on a specific
facility) on its own merits.  In an investigation which uncovers multiple phones which are used for
criminal purposes, repeating information from prior affidavits is acceptable practice, so long as the
affidavit supports probable cause for the target facilities the application seeks to make
interceptions.   In United States v. Mascarenas, 30 Fed Apx. 784, 794 n.10 (10th Cir. 2002)
(unpublished), the Court noted that the government's burden to show necessity is not great.  It
went on to discuss that "generalizations and 'boilerplate' assertions can be made so long as they
are accompanied by specific information about how these generalities apply to the particular
suspects and/or the particular investigation."  Likewise, other courts have found that the use of
identical language in subsequent affidavits is inevitable because investigations involve multiple
wiretaps that target the same group of individuals.  United States v. Crumpton, 54 F.Supp. 986,
1009 (D. Conn. 1999).  As long as each successive affidavit is updated with information gathered
in an ongoing investigation, and the additional information bolsters the government's claim that a
wiretap was necessary, information from prior applications can be used in later applications.

United States v. Hernandez-Sendejas, 268 F.Supp.2d 1295, 1301 (D. Kansas 2003); see United States v. Wirght, 156 F. Supp.2d 1218, 1219 (D. Kansas 2001) (noting that the government is not obligated to repeat certain forms of investigation between each wiretap); see also United States v. Green, 2005 WL 1041205, *9 (E.D. La. 2005) (asserting that the government's overlapping show of necessity in multiple applications was based upon reasons specific to each application); United States v. Rivera, 193 F.R.D. 48 (W.D.N.Y. 1999) ("[I]t should not be surprising that in preparing a wiretap application in connection with investigations involving local drug distribution rings . . . common elements result in substantially similar statements to those used in a prior like investigation as to the necessity for a wiretap."). Therefore, the Court should likewise deny a motion to suppress based on this "cutting and pasting" argument.

## III.    Extensions of the Wiretap Order and the Southern District of Texas Applications

### A.   Defendant's Argument

The defendant also argues that subsequent applications in the Southern District of Texas and extension applications in the Northern District of Illinois were insufficient, claiming that the earlier authorizations granted by a United States District Court Judge were unlawful, and any evidence gathered from the wiretap investigation was therefore tainted. The defendant also argues that agents improperly "piggy-backed" or employed improper "cut-and-paste" techniques in the subsequent affidavits. The defendant's sole complaint regarding the agents "cutting and pasting" was that nothing new was being developed against Torres. (Motion at 9-10).

### B.  Government's Response

Affidavits supporting all subsequent applications and extensions build upon the detailed and forceful statement of probable cause in the first affidavit by explaining how the target

telephones facilitated the money laundering and drug trafficking conspiracy investigated in this case. The affidavits go on to discuss in detail the content of many pertinent conversations discussing drug trafficking and money laundering activities. In fact, Agent Taylor wrote in the May 19, 2005 Affidavit for Extension (hereinafter, "5/19/05 Aff.") that the day after United States District Judge Charles P. Korcoras of the Northern District of Illinois authorized interceptions over target telephone one, agents monitored an intercepted phone call between Mendez-Garcia and Torres where Mendez-Garcia explained to Torres that he had spoken with the person he believed gave him narcotics proceeds to launder (the Chicago U/C). In fact, the U/C called Mendez-Garcia on target telephone one. Mendez-Garcia relayed to Torres that everything went fine with the money laundering operation and their new partners were very pleased. (5/19/05 Aff. at 14-15). Mendez-Garcia also informed Torres that the Chicago U/C informed him that they would have future business. In the initial affidavit for interception, Mendez-Garcia told the Chicago U/C that he only used target telephone one for illegal business. The agent also supplied information regarding intercepted phone calls between Torres and Mendez-Garcia concerning the two men securing tractor-trailer truck drivers who can transport cocaine into the United States. (5/19/05 Aff. at 23-30). Probable cause was therefore again established that the target telephone would continued to be used to facilitate the crimes investigated. Furthermore, those series of calls continue to establish that it was necessary to continue interceptions. Despite the fact that law enforcement had undercover agents who could contact either Torres or Mendez-Garcia individually, they could not intercept the conversations between Torres and Mendez-Garcia unless they had a wiretap. Those intercepted conversations amount to one of the justifications for the wiretaps: the collection of evidence to use at trial to show these two and others were involved in a

18

criminal conspiracy.  (See paragraph 7 in 4/20/05 and 5/19/05 Affs.).

As the agents explained in each of their affidavits in support of electronic surveillance, the agents requested permission to monitor electronic communications "until the interceptions fully reveal the manner in which the Violators and their confederates participate" in the investigated criminal activities.  (See, e.g., paragraph 7 in 4/20/05 and 5/19/05 Affs.).  The 5/19/05 Affidavit also details a newly discovered pattern of smuggling narcotics into the Chicago area by concealing large amounts of drugs within furniture.  This newly discovered investigative fact was discussed by Torres, Mendez-Garcia, and newly added interceptee, Alex Shvartsman.  (5/19/05 Aff. at 15-19).

Other newly identified members of this conspiracy include Olga Kubas and her superior identified at that time as, "Monroy LNU," both of whom were intercepted during the first lawful period of interception.  Agents determined they were talking about trafficking narcotics from Colombia and/or Mexico to the United States.  (5/19/05 Aff. at 19-22).  Among the series of conversations concerning Mendez-Garcia, Kubas and Monroy involved a request on May 11, 2005 for Monroy to telephone Mendez-Garcia, presumably to speak about the narcotics profits that he needs Monroy to launder for a new client (the Chicago U/C).  (5/19/05 Aff. at 22-23).

The two wiretaps in the Southern District of Texas which Special Agent Christine Hanley identified as target telephone 8 (956-739-0504) and target telephone 9 (936-346-0264) benefitted from various authorized wiretaps in the Northern District of Illinois, and also other various Districts encountering related wiretap investigations in U.S. Districts in Texas.  In those wiretap applications, Hanley identified Defendant Torres as a targeted interceptee.  The primary user of the two mobile phones was Jose Bucio.  In both affidavits, Hanley described that law enforcement

19

intercepted Bucio on the two subject telephones while monitoring other lawfully authorized wiretaps, for example Target Telephone 3 used by Target Interceptee Rene Garces. During these intercepted conversations, Bucio discussed narcotics transactions with other suspected drug traffickers. (June 20, 2005 Southern District of Texas Affidavit, hereinafter "6/20/05 Aff." at 23-35) and (July 28, 2005 Southern District of Texas Affidavit, hereinafter 7/28/05 Aff., at 24-27). In the 7/28/05 Affidavit Agent Hanley describes how during the first period of interception for Target Telephone 8 and 9 agents intercepted a phone call from Torres to Bucio. During that July 5, 2005 phone call, Torres asked Bucio if his (Torres) Chicago-based lieutenant, Mendez-Garcia was still in Dallas. The agent explained that Mendez-Garcia and the Chicago U/C traveled to Dallas to meet co-conspirator Carlos Bucio (Jose Bucio's brother). During the meeting, Carlos Bucio explained the organization's method of secreting powder methamphetamine in car batteries. During the phone call between Torres and Jose Bucio, Bucio explained in coded language that Mendez-Garcia had left to transport the methamphetamine back to Chicago. (7/28/05 Aff. at 26). In a July 8, 2005 intercepted phone call, Jose Bucio explained to another co-conspirator that Torres wanted to establish money wiring businesses to further his attempts to launder illegal drug proceeds. (7/28/05 Aff. at 27). These are merely selected examples taken from the two Texas affidavits in question to demonstrate that there was ample probable cause contained in each to support the District Court Judge's finding that the targeted telephones were used by members of the conspiracy, including Torres, to facilitate their illegal money laundering and narcotics trafficking activities.

There is no prohibition in using similar facts to support multiple wiretap affidavits, especially when the investigation deals with a wide-ranging conspiracy. United States v. Eiland,

398 F.Supp.2d 160, 169 (D.D.C. 2005). In <u>Eiland</u>, Judge Lamberth similarly found that the "cut and paste" argument had no merit when dealing with multiple targets or facilities:

> [T]he use of some similar or identical language does not necessarily belie a lack of probable cause. Such practices raise concern in the probable cause analysis only if they indicate the absence of particularized facts on which to base suspicion of individual defendants. Where, as here, the investigation involves multiple defendants alleged to be acting in a common scheme, it is not unusual or inappropriate for some of the same evidence to be used in support of probable cause as to more than one defendant or facility.

<u>Id.</u>

## IV.    Minimization Requirement

### A.    Defendant's Argument

The defendant again makes no specific factual allegation that the agents violated either the Judges' Orders or the statute regarding their minimization requirements. The defendant merely attempts to preserve yet another argument by claiming that "the government has not met the minimization requirement and suppression is mandated." (Motion at 11). The defendant's motion on this basis falls short of the standard required.

### B.    Government Response

18 U.S.C. § 2518(5) mandates that, "Every order and extension thereof shall contain a provision that the authorization to intercept shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." Preliminarily, we note that the defendant's motion to suppress on this basis is wholly inadequate to require the Court grant a hearing on the minimization issue, or arguably even to address it. As the government has stated, the defendant and current counsel have had access to the supporting documentation authorizing the wiretaps in question. Furthermore, the government provided the

defendant copies of the actual calls. The defendant claims, without any factual basis or analysis, that the minimization requirements were not met, and demands suppression of the wiretap surveillance. Without identifying any calls, the government cannot comment on the specifics of this complaint. Therefore the Court should not grant a hearing based on this complaint. The defendant has neither stated a sufficient legal reason for this remedy nor shown the pattern of disregard that he claims.

### 1.    The legal standard for minimization is reasonableness

The Supreme Court interpreted the "minimization" requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 in Scott v. United States, 436 U.S. 128 (1978), a case arising from a wiretap in this district court. The Court stated, "[b]ecause of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law which will decide every case. The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case." Id. at 139-140.

In Scott, the petitioner relied upon the relatively high percentage of intercepted conversations that were eventually classified by monitors as "non-pertinent" to the investigation. On that basis, Scott argued that the agents had not undertaken reasonable steps to limit the interceptions of conversations that had nothing to do with the investigations. The Supreme Court said that such a comparison of raw numbers is of little utility in determining the reasonableness of the minimization efforts.

The reasons for this may be many.  Many of the nonpertinent calls may have been
very short.  Others may have been one-time only calls.  Still other calls may have
been ambiguous in nature or apparently involved guarded or coded language.  In
all these circumstances agents can hardly be expected to know that the calls are
not pertinent prior to their termination.

Id. at 140.  The Court also described other factors that a district court should take into account
when analyzing a claim that there was a failure to properly "minimize" conversations.

In determining whether the agents properly minimized, it is also important to
consider the circumstances of the wiretap.  For example, when the investigation is
focusing on what is thought to be a widespread conspiracy more extensive
surveillance may be justified in an attempt to determine the precise scope of the
enterprise.  And it is possible that many more of the conversations will be
permissibly interceptible because they will involve one or more of the co-
conspirators.  The type of use to which the telephone is normally put may also
have some bearing on the extent of minimization required.  For example, if the
agents are permitted to tap a public telephone because one individual is thought to
be placing bets over the phone, substantial doubts as to minimization may arise if
the agents listen to every call which goes out over that phone regardless of who
places the call.  On the other hand, if the phone is located in the residence of a
person who is thought to be the head of a major drug ring, a contrary conclusion
may be indicated.

Other factors may also play a significant part in a particular case.  For example, it
may be important to determine at exactly what point during the authorized period
the interception was made.  During the early stages of surveillance the agents may
be forced to intercept all calls to establish categories of nonpertinent calls which
will not be intercepted thereafter.  Interception of those same types of calls might
be unreasonable later on, however, once the nonpertinent categories have been
established and it is clear that this particular conversation is of that type.  Other
situations may arise where patterns of nonpertinent calls do not appear.  In these
circumstances it may not be unreasonable to intercept almost every short
conversation because the determination of relevancy cannot be made before the
call is completed.

23

Id. at 140-141.

In Carter, our Court of Appeals stated that "[t]he Supreme Court has indicated that the minimization requirement is not an absolute prohibition on the interception of non-relevant conversations." 449 F.3d at 1295. (Quoting U.S. v. Anderson, 39 F.3d 331 at 342 (D.C. Cir. 1995)), (citing Scott, 436 U.S. at 135). Furthermore, "a defendant who does not identify 'specific conversations that should not have been intercepted, or even . . . a pattern of such conversations,' has offered no 'concrete indications that the government failed to meet its obligations to minimize intercepted communications.'" Id. at 1295. (Quoting Anderson, 39 F.3d at 342). "[G]enerally faulting the government's failure to minimize . . . is not an adequate objection." Id. at 1295. Thus, "[h]aving failed to identify 'specific conversations that should not have been intercepted, or even . . . a pattern of such conversations", id. (quoting Anderson, 39 F.3d at 342), "the issue of reasonable minimization [is] simply not in play." Id. at 1295.

## 2.     Suppression of All the Intercepted Calls is Unwarranted.

The D.C. Circuit has indicated skepticism that suppression of an entire wiretap is an appropriate remedy for failure to minimize particular conversations. Anderson, 39 F.3d at 342 (D.C. Cir. 1995); Scott, 516 F.2d 751, 760 n.19 (D.C. Cir. 1975), aff'd, Scott v. United States, 436 U.S. at 140. The Defendant has not shown that any conversations were improperly intercepted, let alone that a pattern of violations occurred. Lastly, he cites no authority calling for the suppression of the entire wiretap.

The Supreme Court has also taken a very realistic approach to the requirements to minimize. "The statute does not forbid the interception of all non-relevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to minimize the

24

interception of such conversations." <u>Scott v. United States</u>, 436 U.S. 128, 140 (1978).  This

means that "[t]he government is held to a standard of honest effort; perfection is usually not

attainable, and is certainly not legally required." <u>United States v. Uribe</u>, 890 F.2d 554, 557 (1st

Cir.1989).  Even if the defendant could show that some of the intercepted conversations should

not have been intercepted, he could not obtain suppression of the entire wiretap.  At best, he

might be able to justify suppression of particular conversations that should have been

"minimized."  That is so because, total suppression of wiretap evidence is not appropriate unless

the moving party shows that there was a "taint upon the investigation as a whole sufficient to

warrant such sweeping relief." <u>United States v. Baltos</u>, 236 F.3d 27, 32 (1st Cir. 2001).  The

defendants have not come close to establishing a flagrant disregard by the investigators of the

"minimization" requirements of the statute and case law.  The D.C. Circuit has indicated

skepticism that suppression of an entire wiretap is an appropriate remedy for failure to minimize

particular conversations.  <u>Anderson</u>, 39 F.3d at 342 (D.C. Cir. 1995); <u>Scott</u>, 516 F.2d 751, 760

n.19 (D.C. Cir. 1975), <u>aff'd</u>, <u>Scott v. United States</u>, 436 U.S. at 140.  The Defendant has not

shown that any conversations were improperly intercepted, let alone that a pattern of violations

occurred.  Lastly, he cites no authority calling for the suppression of the entire wiretap.

V.      **The Defendant Is Not Entitled to Franks[3] Hearing.**

    A.      **The Legal Standard**

    The defendant has not established that a false statement was made by any affiant by the

appropriate legal standard.  The defendant purports to claim that law enforcement officers either

perjured themselves or recklessly disregarded the truth.  Two claims that the government does not

---

[3]  <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

take lightly, even if the defendant merely attempts to state such a claim to "preserve the issue as further analysis of the wiretaps is concluded." (Motion at 11). Again, like his other arguments, the defendant should have perfected this claim by supplying the required substantial showing and factual analysis in his motion to suppress. He has not. If the Defendant needed more time to develop and explore a serious Franks claim, he should have asked leave of the Court for an extension. The government will object to any attempt by the defendant to now supplement the motions to suppress or to attempt oral argument on any issue he failed to fully support in his motion to suppress, especially the request to conduct a Franks hearing. Like all other claims in his motion to suppress, the defendant's claim is not enough to trigger a hearing.

Before a defendant is entitled to a Franks hearing, he must make a substantial showing that three facts are true: 1) that the affidavit contains a false statement; 2) that the absence of the false statement in the affidavit would negate probable cause; and 3) that the affiant made the false statement with the requisite scienter, that is, knowingly or with a reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154 (1977); United States v. Richardson, 861 F. 2d 291, 293-294 (D.C. 1988) (citations omitted), cert. denied 489 U.S. 1058 (1989) (declining to decide whether an inaccuracy in a warrant affidavit was material to probable cause in the absence of a contention that it was made intentionally or with reckless disregard for the truth). The defendant has failed to make a showing that a hearing is required.

Applications and affidavits for wiretap authorization are subject to the requirements of Franks and its progeny. United States v. Green, 175 Fd. 3rd 822, 828 (10th Cir. 1999); United States v. Lucht, 18 F. 3d 541, 546 (8th Cir. 1994); United States v. Ippolito, 774 F. 2d 1482, 1484-85 (9th Cir. 1985). Thus, the test to be applied in determining whether a defendant is

26

entitled to an evidentiary hearing on the issue of the alleged falsity of the statements in the affidavit, or whether statements proven to be untrue invalidate the warrant.

Importantly, there  is a "presumption of validity" of such affidavits, and the rule announced in Franks with respect to entitlement to an evidentiary hearing "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded."  Franks, 438 U.S. at 167.  In order to be entitled to an evidentiary hearing a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause" Id. at 155-156.  See also Richardson, 861 F. 2d at 293.

**B.     The Affidavits Did Not Contain Materially False Statements**.

The defendant has failed completely to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  Because he has failed to make an adequate showing, he is not entitled to an evidentiary hearing.

The defendant merely suggests that the Texas affidavits list additional instances of prior application for electronic surveillance.  Far from being troubling, as the defendant suggests, the affidavits submitted in the Northern District of Illinois did not need to list the additional applications referenced in the Texas affidavits because none of the targeted interceptees in the Illinois applications were also targeted interceptees in the additional prior applications added in the Texas wiretap applications.  In fact, Defendant Torres's name only appears in two prior applications, but he is clearly listed not as a targeted interceptee, but a target subject of the

27

investigation.  The Court should note that the Texas wiretap applications requested interception

of many more phones and a larger number of targeted interceptees.  It was evident from the Texas

affidavits that the Texas investigations had sought the interception of  seven previous targeted

telephones in several cities.  Therefore, the Illinois affidavit was indeed accurate because it listed

all previous examples of applications to intercept the defendant Torres.  Therefore, the defendant

has not shown that the affidavits contained a material falsehood affecting probable cause or

necessity.

    **C.**    **There has Been No Substantial Showing.**

    The defendant's misguided and unsupported allegations that the agents were deceptive do

not withstand the slightest scrutiny.  More significantly, the defendant has not cited to any facts

that would constitute "a substantial showing" that the agents either made knowing false

statements of made statements with a disregard for the truth in an effort to mislead the issuing

judge.

    Assuming arguendo, that Agent Taylor intentionally left out the applications which only

list Torres as a subject of the investigation but not as a targeted interceptee.  The defendant's

arguments would still ultimately fail in his contention because he has failed to show that the

statement was material to probable cause or necessity.

    **D.**    **The Statements were not Material.**

    As discussed above, the claimed "false" or "recklessly" misleading statements were neither

false or material to the affidavit.  The omitted prior applications did not identify applications to

intercept Torres, and they dealt with investigations more closely related to the investigations in

the neighboring Texas Districts instead of the Illinois cell.  Therefore, the omission would not

effect probable cause or necessity.

In summary, the defendant has not come close to making the requisite substantial showing that would entitle him to a <u>Franks</u> hearing, and his motion for a hearing should be denied.

## <u>CONCLUSION</u>

For the aforementioned reasons, all of the defendant's arguments are without merit. Because the defendant's claims are unsubstantiated and without merit, there is no basis to suppress any possible evidence derived from the electronic surveillance.

WHEREFORE, for the foregoing reasons, the United States respectfully asks the Court to deny the defendant's motion without hearing.

Respectfully submitted

KENNETH A. BLANCO, Chief
Narcotic and Dangerous Drug Section


_____/s/ Julius Rothstein_____
JULIUS ROTHSTEIN, Deputy Chief
Narcotic and Dangerous Drug Section
D.C. Bar No. 4500036
U.S. Department of Justice
1400 New York Avenue, N.W.
8th Floor
Washington, D.C.  20530
(202) 514-5540
julius.rothstein@usdoj.gov


_____/s/ Matthew Stiglitz_____
Matthew Stiglitz
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
8th Floor
Washington, D.C.  20530
(202) 305-3646
matthew.stiglitz@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was electronically filed this 11th day of February 2008 via ECF, which will forward a copy to Manuel Retureta, Esq., counsel for the defendant.


_____/s/ Julius Rothstein_____
JULIUS ROTHSTEIN

30